THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, v. CONNIE DOWNEY, Petitioner-Appellant.

Second District Nos. 2—88—1077, 2—88—1078 cons.

Opinion filed June 15, 1990.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WOODWARD delivered the opinion of the court:

Defendant, Connie Downey, appeals from an order of the circuit court dismissing his post-conviction petition in two separate cases. Pursuant to defendant's motion, this court consolidated these cases for this appeal. Defendant raises the issue of whether the trial court abused its discretion in denying defendant an evidentiary hearing on the issues of the ineffective assistance of trial and appellate counsel.

Defendant was found guilty in a bench trial of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2), two counts of robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—1), and one count of misdemeanor theft (Ill. Rev. Stat. 1985, ch. 38, par. 16—1(a)(1)) resulting from occur-

rences in an armed robbery of a grocery store in Waukegan, Illinois, on January 19, 1985. In a separate jury trial, defendant was convicted of armed robbery at a pharmacy in North Chicago, Illinois, on January 4, 1985. The cases were consolidated for sentencing, and the trial court sentenced defendant to two consecutive 30-year terms of imprisonment for the armed robbery convictions. Defendant's convictions and sentences were affirmed on appeal in *People v. Downey* (1987), 162 Ill. App. 3d 322. The facts relating to the underlying crimes were set forth in detail in the direct appeal, and we will discuss only those facts relevant to the issue in these consolidated appeals.

On May 19, 1988, defendant filed a *pro se* petition for post-conviction relief. Defendant alleged that his trial counsel was ineffective for failing to challenge defendant's arrest on the basis of lack of probable cause. Defendant attached a copy of the transcript of the suppression hearing in 1985, when defendant was represented by the public defender.

At the suppression hearing, Officer Ryan Milot, of the Waukegan police department, testified that on January 22, 1985, he and Officer Hansen went to a home in North Chicago to look for defendant. The officers found defendant in a bedroom closet, crouched down, hiding beneath some clothes. Hansen told defendant to come out of the closet. The officers told defendant to get dressed, and they asked him to come down to the police station to answer some questions. Milot denied that they arrested defendant at the house. Defendant agreed to accompany the officers to the police station. At the police station, the officers read defendant the *Miranda* rights. According to Milot, defendant was free to leave the police station. Milot further testified to events which occurred at the police station, including defendant's confession. Defendant was arrested after he confessed to one crime, and he eventually confessed to a total of 10 crimes.

On cross-examination, defense counsel attempted to ask Milot why they went to the house in North Chicago. The prosecutor objected on the ground of relevancy, and the court sustained the objection. Defense counsel then explained that the question related to whether defendant was in custody. The prosecutor responded that how defendant was brought into the police station was irrelevant because he did not make any statement until after the officers read him the *Miranda* warnings. Defense counsel then argued that whether defendant was in custody was relevant to the confession. The court then allowed defense counsel to proceed with that line of questioning.

Milot testified that he had received a tip to go to that address in

North Chicago as part of an investigation into several armed robberies. The officers had gone to the house and were met at the door by a man who told the officers that defendant was not there. The officers left to telephone the house to determine if defendant was there. Milot did not know why defendant was a suspect in the armed robberies except that the police had a photograph from one incident, and, after showing it to several people, they "came up with" defendant as a suspect. The second time they went to the house, a woman answered the door. The officers asked if defendant was there. She said no and told the officers that they "could come inside and look" if they wanted. The officers then entered the house and searched for defendant. Milot admitted that the officers did not tell defendant that he was free to go after they arrived at the police station.

Mark Hansen, a Waukegan police officer, testified that he was a friend of defendant. He went with Milot to look for defendant. The officers found defendant hiding in a bedroom closet. At that time, Hansen had his hand on his gun, and it was halfway out of the holster. The officers had defendant come out of the closet. Hansen asked defendant to come to the police station to talk about something, but he did not tell defendant about what they wanted to talk with him. Hansen testified that they did not arrest defendant at the house and that he was not under arrest in the squad car. Hansen also testified about events which occurred at the police station.

Hansen explained that he did not go into the interrogation room with defendant. More than an hour after they brought defendant to the police station, one of the detectives who had been talking to defendant told Hansen that defendant wanted to talk to him and that the detectives had already read defendant his rights. When Hansen went in to talk to defendant, defendant asked him "how many years he was going to get for the robbery." Hansen asked defendant "why he had done the robberies." Defendant told Hansen that "he had done them because his family wasn't giving him any support; he needed money and it was cold out." Hansen further questioned defendant about the robberies, and then left the room and told the detectives that defendant confessed to committing all the robberies.

On cross-examination, Hansen explained the circumstances behind the visit to the house in North Chicago. The police received an anonymous tip from Crime Stoppers that defendant had committed a series of armed robberies in the Waukegan and North Chicago area, and the tipster gave the police a telephone number at which defendant could be reached. Hansen did not have any reason to know how the tipster knew defendant was involved in the armed robberies. Defendant was

already a suspect, but Hansen was "not sure why." Someone came up with defendant's name after viewing the videotape of an armed robbery. Hansen had seen the videotape but did not recognize the offender as defendant. Hansen admitted that he never told defendant he was free to go because "[i]t wasn't needed." On redirect, Hansen stated that they did not try to get a warrant to arrest defendant because Hansen knew it would be useless without a positive identification of defendant as the offender.

Detective Howard Pratt testified that he interviewed defendant at the Waukegan police station. According to Pratt, defendant was not in custody or under arrest. Pratt and Detective Milot read defendant his rights and then gave him a copy of a form with the *Miranda* rights printed on it. Defendant read the form and stated that he understood it, but he refused to sign it. The detectives then asked him about one of the robberies. Defendant asked them "how much time would he get" if he talked about the incident. After an hour and one-half, defendant told the detectives that he wanted to talk to Officer Hansen. After speaking with Hansen, defendant gave a statement to the detectives. Defendant was arrested after he gave a tape-recorded statement about one of the robberies.

In several colloquies, defense counsel and the prosecutor argued the relevance of the issue of whether defendant was in custody. The court told them, "I don't see [custody] as an issue from the Motion unless there is another Motion." Defense counsel responded that the issue of custody was inherent in the motion to suppress.

Defendant testified that on January 22, 1985, he was staying with friends in North Chicago. The police came to the house and knocked on the door. Defendant was unsure who answered the door, but the person told the police that defendant was not there. Twenty minutes later, there was a phone call, and one of his friend's younger brothers answered and said it was for defendant. When defendant picked up the phone, whoever had called hung up. Approximately 15 to 20 minutes later, the police returned to the house. When defendant heard it was the police at the door, his friends told him to go into a bedroom until they could find out what the police wanted with defendant. The police asked if defendant was there, and his friends told them he was not. Defendant's friend told the police that they could not come in the house. According to defendant, the police "barged in anyway," saying that they knew defendant was there because they had just called the house and someone said he was there. During this conversation, defendant was hiding in the bedroom closet.

The police officers came into the bedroom and opened the closet

where defendant was hiding. Officer Hansen told defendant to come out. According to defendant, Hansen had his gun completely out of the holster. The officers asked defendant to accompany them to the police station to answer some questions. Defendant asked them what it was about, but they would not tell him. Defendant was under the impression that he did not have a choice, so he went to the police station. Before they left the bedroom, the officers frisked defendant. They did not handcuff him, but defendant walked to the squad car between the officers.

At the police station, the officers put defendant in an interrogation room. Milot and Pratt came in and told defendant they wanted to ask him some questions about some robberies but that he was not charged with anything. Defendant told them he did not know about any robberies. Defendant also told the officers that if they were not charging him with anything, they should let him call his attorney or the public defender. The officers answered that they just wanted to ask him some questions and then read defendant the *Miranda* warnings. Defendant denied that he asked to make a deal with the officers because he knew "[t]he police can't make deals." The officers advised defendant that if he confessed to the robberies, they would try to see that defendant would not "get *** more than 5 years." Defendant told them that he did not trust them and that he preferred to talk with Officer Hansen. Pratt and Milot continued to question defendant, but "they weren't getting anywhere, so one of them went and got Lt. Hansen."

Hansen came in and told defendant that he could not understand or believe that defendant was the person responsible for all the robberies. Hansen asked if defendant was on drugs. Defendant told Hansen that he was tired, and he thought Pratt and Milot were trying to intimidate him, and defendant was afraid they might hit him so defendant asked to talk to Hansen. Since defendant thought they had photographs of him and that a witness had picked out his picture, defendant "decided [to] go ahead and confess all of them to [Hansen]."

During his argument, the prosecutor argued to the court that defendant was not in custody when the police advised him of his *Miranda* rights. The main focus of the State's argument was that defendant voluntarily waived his *Miranda* rights, agreed to talk to the police, and did not ask for an attorney. Rather, the prosecutor argued, defendant "was trying to cut a deal." Defense counsel argued that defendant was in custody from the moment the officers picked up defendant at the house. Counsel also argued that defendant in-

voked his right to remain silent, and he finally confessed after the police persisted in questioning him.

The court noted that the testimony of the police and defendant conflicted concerning whether defendant had been arrested at the house. The court remarked, "there are some [things] which bring question marks to my mind about entering the house and going into a bedroom and looking in the closet." However, the court did not rule on the issue because there was not "any real evidence or argument about the arrest" or the search. The court further stated that the question of whether defendant was in custody was irrelevant because the police officers read the *Miranda* warnings before they questioned defendant. The court concluded that the evidence presented at the hearing showed that defendant's confession was voluntary.

On May 27, 1988, the trial court issued an order taking defendant's post-conviction petition under advisement to determine whether it had any merit. Apparently, the court decided that it did have merit because on June 3, 1988, the court appointed counsel to represent defendant. On October 3, 1988, defendant filed a supplemental petition for post-conviction relief. The supplemental petition was similar to the original petition except that it also alleged that defendant was denied the effective assistance of appellate counsel because the appellate defender failed to raise in the direct appeal the issue of the effectiveness of defendant's trial counsel. Defendant attached to the supplemental petition a motion to quash arrest, a motion to suppress statements, and a motion to suppress arrest and statements which were presented by his appointed counsel. It is unclear whether these motions were filed with the court independently of the supplemental petition.

Defendant also attached to the supplemental petition a copy of a letter defendant wrote to the appellate defender, dated November 4, 1986. In this letter, defendant informed his appellate counsel of the issues he wished to present on appeal. One of those issues defendant listed was the ineffective assistance of trial counsel for failure to file a motion to quash arrest based on the illegal entry into the house and based on lack of probable cause to arrest. Defendant also stated in his letter that there was sufficient evidence in the transcript to determine whether defendant was in custody at the house and whether he was arrested without probable cause.

In addition, defendant attached to the supplemental petition the affidavit of his appellate counsel. The assistant appellate defender stated that, from off-the-record information he received from defendant, the appellate defender thought defendant was arrested without

probable cause. The assistant appellate defender did not raise that issue on appeal because he believed the record was insufficient to support the issue. The assistant appellate defender told defendant that he could pursue the issue in a post-conviction petition. Finally, defendant attached to the supplemental petition a brief and argument in support of the petition.

The State filed a motion to dismiss the post-conviction petition. In the motion, the State argued that the petition should be dismissed because defendant failed to raise in the direct appeal the issue of the effective assistance of trial counsel and, therefore, the issue is barred by *res judicata* and is waived. The motion further argued that the failure to raise the issue was appellate strategy, not an error amounting to the ineffective assistance of appellate counsel.

On October 28, 1988, the court held a hearing on the motion to dismiss. After hearing arguments of counsel, the trial court explained its ruling. The trial court found that there was sufficient evidence adduced at the suppression hearing to raise the issue of ineffective representation on direct appeal. The court also stated that defendant's appellate counsel may have correctly predicted that if he raised this issue without further evidence, it may have been resolved against defendant. The court found that the decision not to raise the issue was not patently wrong and that all the issues raised in the post-conviction petition were known and were part of the original record and could have been raised on appeal, but they were not. The court granted the motion to dismiss on the basis that the issue raised in the post-conviction petition was waived. Defendant then timely filed this appeal.

■ Defendant contends he is entitled to an evidentiary hearing on his post-conviction petition because his appellate counsel was ineffective for failing to raise the issue of trial counsel's effectiveness when there may have been a substantial basis for challenging defendant's arrest on fourth amendment grounds. A Post-Conviction Hearing Act (Act) (Ill. Rev. Stat. 1987, ch. 38, par. 122—1 *et seq.*) proceeding is not an appeal, but a collateral attack on the judgment. (*People v. Caballero* (1989), 126 Ill. 2d 248, 258.) Under the Act, a defendant is not entitled to an evidentiary hearing unless he has made a substantial showing of a violation of a constitutional right and the allegations are supported by the record or by affidavits. (*People v. Del Vecchio* (1989), 129 Ill. 2d 265, 279.) All well-pleaded facts in the petition are taken as true for the purpose of determining whether to grant an evidentiary hearing. (*Caballero*, 126 Ill. 2d at 259.) We will not disturb the trial court's dismissal of the petition unless that deter-

mination was clearly erroneous. *Del Vecchio*, 129 Ill. 2d at 284.

■ The trial court dismissed defendant's petition on the basis that the issues he raised were waived or barred by *res judicata*. Defendant argues that the issue of trial counsel's effectiveness was not waived or barred because of appellate counsel's ineffectiveness. Generally, the issue of whether a defendant was denied the effective assistance of trial counsel is waived if not raised in the direct appeal. (*People v. Owens* (1989), 129 Ill. 2d 303, 308.) Where fundamental fairness requires it, however, the waiver rule is relaxed in post-conviction proceedings. (*Del Vecchio*, 129 Ill. 2d at 280.) Appellate counsel will be found to have been ineffective where counsel failed to raise on appeal a "patently meritorious" issue. (*People v. Butler* (1989), 186 Ill. App. 3d 510, 517.) We will not find the issue of trial counsel's incompetency waived if we conclude that appellate counsel was ineffective for failing to raise that issue.

■ A defendant is entitled to the effective assistance of counsel on direct appeals. (*Caballero*, 126 Ill. 2d at 269, citing *Evitts v. Lucey* (1985), 469 U.S. 387, 396-97, 83 L. Ed. 2d 821, 830-31, 105 S. Ct. 830, 836-37.) The two-part *Strickland* standard applies when determining the competency of appellate counsel. (*Caballero*, 126 Ill. 2d at 269-70; see *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) Where, as here, the defendant argues that his appellate counsel failed to raise a particular issue, the defendant must show how the failure to raise that issue was objectively unreasonable and that a reasonable probability exists that, but for this failure, the sentence or conviction might have been reversed. *Caballero*, 126 Ill. 2d at 269-70.

Defendant's appellate counsel stated in his affidavit that he thought trial counsel was ineffective for failing to file a motion to quash arrest, but that he did not raise the issue because he believed the record was insufficient to support the issue. The trial court disagreed with appellate counsel's assessment of the record and found that the record was sufficient for appellate review. We agree with the trial court that the record was sufficient for meaningful appellate review of the issue.

■ To determine whether defendant was denied the effective assistance of appellate counsel, we must first determine whether the record supports the conclusion that trial counsel was ineffective and, if so, whether that deficiency prejudiced defendant. Defendant claims he was denied the effective assistance of trial counsel because the public defender did not file a motion to quash defendant's arrest. For defendant to have succeeded on that motion, he needed to prove that

his arrest or detention was illegal and that his confession was a fruit of that illegal arrest. *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248.

■ First, we must determine whether there was sufficient evidence to establish that defendant was seized within the meaning of the fourth amendment. A person has been seized when, in view of the surrounding circumstances, a reasonable person would have believed that he was not free to leave. (*Michigan v. Chesternut* (1988), 486 U.S. 567, 573, 100 L. Ed. 2d 565, 572, 108 S. Ct. 1975, 1979.) The focus in that analysis is on the coercive effect of the police officers' conduct. (*Chesternut*, 486 U.S. at 573, 100 L. Ed. 2d at 572, 108 S. Ct. at 1979.) The police officers' subjective belief that the defendant was free to leave is not determinative where it was not communicated to the defendant. (*People v. Stofer* (1989), 180 Ill. App. 3d 158, 168.) The State has the burden of proving that the defendant's consent to accompany the officers was voluntary and was not the product of express or implied coercion or duress. (*United States v. Mendenhall* (1980), 446 U.S. 544, 557, 64 L. Ed. 2d 497, 511, 100 S. Ct. 1870, 1879.) Some examples indicative of a seizure are "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877.

In *Stofer*, the appellate court found that the defendant was seized and did not voluntarily accompany the police officers to the police station for questioning. The police officers came to the defendant's house and announced that they were taking the defendant to the police station for questioning about a murder. The officers refused to question the defendant at his home. The defendant was not told that he was free to refuse to accompany the officers, and they led him to the police car. One of the officers testified that the defendant was taken into custody at that time. *Stofer*, 180 Ill. App. 3d at 167.

In *Dunaway*, the defendant was not questioned where he was found. He was taken from a neighbor's house and brought to the police station in a police car. The defendant was put in an interrogation room, and the police never told him that he was free to leave. (*Dunaway*, 442 U.S. at 212, 60 L. Ed. 2d at 836, 99 S. Ct. at 2256.) The Supreme Court concluded that although the defendant had not been arrested, he was seized. 442 U.S. at 212, 60 L. Ed. 2d at 836, 99 S. Ct. at 2256.

In *People v. Dowdell* (1980), 81 Ill. App. 3d 266, three police offi-

cers went to the defendant's girlfriend's apartment, where they told the girlfriend that they wanted to talk to him. The girlfriend admitted the officers into the apartment. The officers asked the defendant to accompany them to the police station because they wanted to ask him some questions. The defendant asked the officers what they wanted to question him about, but they refused to tell him. The defendant got his coat and went with the officers in a squad car to the police station. There he was read his *Miranda* rights, after which he made inculpatory statements about a burglary. The police officers testified that the defendant was not arrested in the apartment or at any time prior to his confession, and he was free to refuse to accompany the officers, although the defendant was never told that he was not under arrest or that he did not have to go the police station. The appellate court found that the officers' expedition to the apartment "was a deliberate special trip" by three officers which constituted a detention or seizure. *Dowdell*, 81 Ill. App. 3d at 270.

 Similarly, in the present case, the officers testified that they found defendant hiding in a closet under some clothes. One of the officers, with his gun halfway out of the holster, told defendant to come out of the closet. They refused to question him at the house. The officers took defendant to the police station in a police car. Defendant was put in an interrogation room. At no point was he told that he was free to refuse to accompany the officers or that he was free to go. We conclude that a reasonable person in defendant's place might have believed that he was not free to refuse to accompany the officers or that he was free to leave the police station. Defendant's acquiescence was not voluntary. Of particular significance is the fact that defendant was hiding from the police and told to come out of the closet. Clearly, he did not go voluntarily with the police if he did not want them to find him.

 █ The police may not seize or detain a suspect without probable cause. (*Dunaway*, 442 U.S. at 215, 60 L. Ed. 2d at 837-38, 99 S. Ct. at 2258.) Probable cause exists when the totality of the circumstances known to the arresting officers is such that a reasonably prudent person would believe that the suspect is committing or has committed a crime. (*People v. Montgomery* (1986), 112 Ill. 2d 517, 525.) The officers knew there had been a series of armed robberies in the area and the offender was a black male. They had a videotape of the offender from one of the robberies, but Officer Hansen did not recognize the offender as defendant. "Someone" suggested defendant as a possible suspect. There was also an anonymous tip from Crime Stoppers which said that defendant committed the offenses, and the caller

gave the telephone number where defendant could be reached; however, Officer Hansen did not know how the tipster knew defendant committed the crimes.

This information alone is not sufficient to establish probable cause. The anonymous tip is not significant because it lacked the *indicia* of reliability. (*Cf. People v. Crest* (1989), 188 Ill. App. 3d 768.) The officers indicated that the caller did not give any details, and there was no evidence to corroborate the tip. In addition, Officers Hansen and Milot did not believe they had probable cause to arrest defendant when they went to the house. They testified that they were looking for him because they wanted to question him. Thus, there is a reasonable probability that the trial court might have granted a motion to quash the arrest.

■ To determine whether there is a reasonable probability that defendant's confession would have been suppressed as a "fruit of the poisonous tree," we must apply the test established in *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, and its progeny. The factors that the court must consider to determine whether the confession was a product of the arrest are: the temporal proximity of the arrest and the confession, the presence of intervening circumstances, and the purposefulness and flagrancy of the official misconduct. *Brown*, 422 U.S. at 603-04, 45 L. Ed. 2d at 427, 95 S. Ct. at 2261-62.

■ Applying the *Brown* factors to the facts of this case, we conclude that there is a reasonable probability that the trial court may have found that the confession was the fruit of the illegal detention. Defendant confessed less than two hours after he was brought to the police station, and there were no intervening circumstances. In addition, the questioning of defendant appears to have been an "expedition for evidence" (*Brown*, 422 U.S. at 605, 45 L. Ed. 2d at 428, 95 S. Ct. at 2262), in which the police "interrogated the defendant in the hope of obtaining sufficient information upon which to predicate the probable cause necessary for an arrest" (*People v. Townes* (1982), 91 Ill. 2d 32, 38).

■ The issue of trial counsel's ineffectiveness was not frivolous, but was "patently meritorious." If the issue of trial counsel's ineffectiveness had been raised on appeal, it would have been the strongest issue. (See *People v. Downey* (1987), 162 Ill. App. 3d 322.) We therefore conclude that appellate counsel's performance was deficient, and the failure to raise the issue was objectively unreasonable. In addition, this is not the type of error which would be deemed harmless. Thus, defendant is entitled to an evidentiary hearing on the issues of the in-

effectiveness of appellate and trial counsel.

We wish to point out that although we have concluded that defendant is entitled to an evidentiary hearing on these issues, nothing in our opinion requires the trial court to grant defendant's petition. The trial court must make the determination to grant or deny the petition based upon the evidence introduced at the evidentiary hearing.

The judgment of the circuit court is reversed, and this cause is remanded for an evidentiary hearing on defendant's post-conviction petition.

Reversed and remanded with directions.

INGLIS and McLAREN, JJ., concur.