THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHNNY ALMODOVAR, Defendant-Appellant.

First District (2nd Division)   Nos. 1—89—2586, 1—91—1659 cons.

Opinion filed September 1, 1992.

Hinshaw & Culbertson, of Chicago (Thomas M. Burnham, Gerald Haberkorn, and Robert C. Heist, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and William D. Carroll, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DiVITO delivered the opinion of the court:

Following a bench trial, defendant Johnny Almodovar was found guilty of murder, armed robbery, and armed violence; he was subsequently sentenced to 60 years' imprisonment for murder. Defendant sought post-conviction relief, arguing that his trial counsel provided ineffective assistance. The circuit court denied defendant's petition. Defendant appeals from that denial and from his conviction, contending that (1) the circuit court erred in failing to hold an evidentiary hearing on his petition for post-conviction relief where he alleged that his trial counsel was ineffective for failing to move to quash his arrest and to suppress his statement following his arrest; (2) the circuit court erred in denying his petition for post-conviction relief where he alleged that his trial counsel suffered from a conflict of interest; (3) he was not proved guilty of murder beyond a reasonable doubt; and (4) the circuit court erred in denying his motion to strike the State's affidavit supporting its motion to dismiss his post-conviction petition.

On October 14, 1988, defendant was arrested for and later charged with the murder of Maximino Pedraza. At trial, the State presented the testimony of several witnesses, none of whom directly linked defendant with the crime.

Maria Levia testified that on October 11, 1988, at approximately 12:45 in the afternoon, while in her home, she noticed three men coming out of a yard and walking towards the alley. The man walking in front was wearing a grey sweat shirt; just behind him and to his right walked a man in a navy blue sweat shirt. The man in the navy blue sweat shirt had his left hand on the neck of the first man and held his right hand next to his stomach, pointing it at the first man. Another man walked directly behind the man in the navy sweat shirt. Shortly after losing sight of the three men, Levia heard a gunshot. When she left her house and walked into the alley, Levia saw only the man in the grey sweat shirt, lying facedown in the alley covered with blood.

Responding to a battery call, Chicago police officer Luis Montalvo found the body of the man in the grey sweat shirt lying in the alley; another officer at the scene, Jose Capetillo, identified the dead man as Maximino Pedraza. Though Montalvo recovered a spent .25 caliber shell, he found no weapons in the area, nor did he find any money, jewelry, or keys on Pedraza. Officer Anthony Bongiorno, also at the scene, located Pedraza's Mercedes-Benz near the scene and requested that the evidence technicians lift fingerprints from the car.

According to the testimony of Luz Castro, a "friend" of Pedraza, defendant and Pedraza were "associates." On October 10, 1988, Luz's boyfriend Lorenzo Hill drove to her house in Pedraza's Mercedes-Benz. There, Hill asked Luz to return the keys to the Mercedes to Pedraza and to tell him that Hill did not want the car; Hill further asked Luz to tell Pedraza not to bring the cocaine that Hill had agreed to purchase. That day, Luz gave Hill's message to Pedraza; Pedraza, however, asked her not to tell Hill that she had relayed his message because he already had the cocaine.

Luz Castro's sister Eva Castro testified that Pedraza arrived at her house on October 10, 1988, and invited her to McDonald's. Before driving to McDonald's, they stopped at Hill's house, where Pedraza had a short conversation with Hill and handed him a small paper bag. Eva, still in the car, was unable to see the contents of the bag; however, she knew that Pedraza was a drug dealer. Following dinner at McDonald's, Eva returned home at 9 or 10 that evening. Pedraza then left, telling Eva that he would meet her the next day after he met with Hill and picked up his car.

Assistant State's Attorney Joanne Roddy testified that on October 15, 1988, at approximately 4 a.m., she met with defendant at the police station. After reviewing the police reports, she spoke to defendant and advised him of his rights and of her position with the State's Attorney's office. Thereafter, defendant voluntarily told her his version of the shooting. Following the brief conversation with defendant, Roddy asked him if he would agree to give a statement to a court reporter; defendant agreed, and later that morning a court reporter took defendant's statement. Thereafter, defendant was given the opportunity to read, review, and correct his transcribed statement.

At trial, the statement given by defendant while at the police station was entered into evidence. According to his statement, defendant was a friend of Hill; though he did not know Pedraza, defendant had "heard about him." On October 10, 1988, Hill told defendant that he had purchased drugs from Pedraza and that he had yet to pay for

them. Hill then told defendant that Pedraza was going to pick up the money owed to him the following day.

That next day, defendant and his friend Tamany Snow waited behind Hill's house in order to rob Pedraza. As defendant kept a lookout for Pedraza's car, Pedraza drove up in his Mercedes and exited it. Snow then ran up to Pedraza and grabbed him, saying "Give me your money"; in response, Pedraza stated, "It's in my pocket." Walking Pedraza to the back of the house, Snow then grabbed both the money and Pedraza's bracelet. Though defendant heard a shot, he could not see Snow shoot Pedraza because Snow had walked Pedraza behind a garage. When defendant asked Snow why he had shot Pedraza, Snow explained that Hill had told him that "if he was going to rob [Pedraza], that he had to kill him." Running to the front of the house, Snow was about to "jump" into Pedraza's Mercedes when defendant told him, "Don't jump in the car, just throw the keys in there." Thereafter, the two men ran towards the "neighborhood," split the money taken (about $130), and "went about [their] business." Later, defendant told another man to throw away the gun, a black .25 caliber automatic.

Following stipulations that provided the autopsy report and the fingerprint results from the Mercedes, the State rested. The defense did not present any witnesses. Thereafter, the circuit court found defendant guilty of murder, armed violence, and armed robbery and sentenced him *in absentia* to 60 years' imprisonment for murder.

Following his conviction, defendant appealed; his appeal, however, was dismissed for want of prosecution. After changing counsel, defendant filed a motion to reinstate his appeal, which was granted by this court on September 4, 1990.[1]

On November 7, 1990, defendant filed his petition for post-conviction relief, arguing that he was denied effective assistance of counsel. Specifically, defendant maintained that his trial counsel had failed to file motions to quash his arrest or to suppress the statement he gave to police. Defendant argued that this failure rose to the level of ineffective assistance of counsel because his statement, the only evidence linking him to the shooting, was taken after he was arrested without probable cause. Defendant further argued that he was denied effective assistance of counsel due to his attorney's conflict of interest; specifically, defendant maintained that his attorney failed to inform ei-

---

[1]That appeal was stayed during the pendency of defendant's petition for post-conviction relief.

ther him or the court that the attorney was being investigated for, charged with, and indicted on three counts of Federal tax fraud during the time he represented defendant.

Following arguments of counsel, the circuit court denied defendant's petition, finding that it had "the testimony of the officer here concerning the circumstances under which [defendant] was arrested," and that the arrest was a result of an ongoing investigation by the police and thus was made with probable cause.

## I

Initially, defendant contends that the circuit court erred in denying his petition for post-conviction relief without an evidentiary hearing. Specifically, he maintains that neither the trial testimony nor the police reports established probable cause for his warrantless arrest. Contending that his statement to the police was a result of an illegal arrest, defendant asserts that his trial attorney was ineffective in failing to move to quash the arrest and suppress the subsequent statement given to the police. The State responds that the circuit court was within its discretion in denying defendant's post-conviction petition because defendant failed to prove a substantial deprivation of his constitutional rights. See *People v. Griffin* (1985), 109 Ill. 2d 293, 303, 487 N.E.2d 599.

As the State correctly asserts, a defendant is not entitled to a post-conviction evidentiary hearing unless he has made a substantial showing of a violation of a constitutional right and his allegations are supported by the record or by affidavits. (*People v. Del Vecchio* (1989), 129 Ill. 2d 265, 279, 544 N.E.2d 312; *People v. Hickox* (1992), 229 Ill. App. 3d 454, 593 N.E.2d 736.) A court's dismissal of a defendant's petition will thus not be disturbed unless that determination was clearly erroneous. *People v. Downey* (1990), 198 Ill. App. 3d 704, 712-13, 556 N.E.2d 300; *People v. Hanrahan* (1985), 132 Ill. App. 3d 640, 641, 478 N.E.2d 31.

In the instant case, defendant predicated his petition on denial of effective assistance of counsel, asserting that his trial counsel should have moved to quash his arrest and suppress his statement to police; he supported his petition with affidavits and with police reports. Defendant therefore was required to show that his counsel's conduct fell below an objective standard of reasonableness and that such conduct prejudiced defendant. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) Thus, in order to evaluate the circuit court's dismissal of defendant's petition, we must look to whether defendant would have succeeded on motions to quash and suppress, in other

words, whether his arrest or detention was illegal, whether his confession was a fruit of that illegal arrest, and further, whether he was prejudiced by his attorney's failure to present these issues in motions to quash and suppress. See *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248.

An arrest without a warrant is valid only if it is supported by probable cause. (*People v. Montgomery* (1986), 112 Ill. 2d 517, 525, 494 N.E.2d 475; *People v. Tisler* (1984), 103 Ill. 2d 226, 236-37, 469 N.E.2d 147.) Probable cause exists when the totality of the facts and circumstances known to the officers is such that a reasonably prudent person would believe that the suspect is committing or has committed a crime. (*Montgomery*, 112 Ill. 2d at 525.) Whether probable cause is present is governed not by technical legal rules but by commonsense considerations which are factual and practical. *Tisler*, 103 Ill. 2d at 236.

In the instant case, the circuit court denied defendant's petition, finding that defendant's arrest was proper because "the police don't have to have absolute probable cause in the investigatory phase of investigating crimes, and the officers in this instance were investigating." Nevertheless, defendant asserts that the police officers effectuated an illegal arrest because, though they were indeed "investigating" Pedraza's murder, they were not justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted their detention of defendant.

For support, defendant points to the police reports, attached to his post-conviction petition, which state:

> "While searching for [Lorenzo Hill] a male white hispanic approached the reporting detective and informed him that word on the street revealed that [defendant] was involved in the shooting and that he could be located at his sisters [*sic*] residence \*\*\*. Proceeding to this location [defendant] was observed and was asked to accompany the Officers to the [14th] District for additional investigation relative to this Homicide. [Defendant] was advised of his Miranda Warnings and stated that he understood these Warnings and agreed to accompanied [*sic*] the Officers."

The police reports further indicated that, after being readvised of his rights, defendant told the police essentially the same story that he subsequently told Assistant State's Attorney Roddy.

Defendant thus argues that an anonymous tip about "word on the street" is insufficient to constitute probable cause for his arrest. Likewise, he further asserts that the police officers were not merely "in-

vestigating," but rather, arrested him, put him in handcuffs, and then brought him to the station.[2]

Defendant relies upon *People v. Hollins* (1988), 169 Ill. App. 3d 304, 523 N.E.2d 1309, where the court found that a "tip" to police given by an unknown person was not sufficient to constitute probable cause. The *Hollins* court instead held that the officer's information that "someone" told him that the defendant "had been involved" in the crime merely established a "suspicion" and did not establish probable cause to arrest. *Hollins*, 169 Ill. App. 3d at 308.

■ Like the defendant in *Hollins*, defendant in the instant case was arrested by police after an anonymous tip about the "word on the street." Here, according to the police reports, no other information linked defendant with Pedraza's murder. Thus, it appears from the record on appeal that defendant may have been arrested without probable cause. Without the testimony of the arresting officers, however, it is difficult to determine whether they knew the tipster, and if they did, found him to be a reliable informant or whether they had additional information implicating defendant in Pedraza's murder. Contrary to the belief of the circuit court, the record is devoid of information concerning defendant's arrest other than the arrest reports. The circuit court was mistaken when it stated, in denying defendant's petition, that it had "the testimony of the officer here concerning the circumstances under which [defendant] was arrested"; no such testimony was presented.

Furthermore, though the police were indeed "investigating," a review of the record persuades us that the police officers may not have had "knowledge of facts which would lead a reasonable man to believe that a crime has occurred and that it has been committed by the defendant." (See *People v. Gacho* (1988), 122 Ill. 2d 221, 234-35, 522 N.E.2d 1146.) Rather, the police officers' information from an unidentified man that "word on the street" was that defendant "was in-

---

[2]Both defendant and his sister, in affidavits attached to his post-conviction petition, stated that he was arrested and taken away in handcuffs by the police, though the police showed no warrant for his arrest. The State contends that defendant was not "arrested," but merely taken to the station for questioning. The record is unclear as to whether defendant was subjected to any of the procedures of an arrest—searching, booking, and fingerprinting; however, the police "arrest report" indicates that defendant was "arrested" on October 14, 1988, at 10:45 p.m., the time the police brought him to the station for questioning. Furthermore, the same written police reports which reflect that defendant was invited to accompany the police to the station at 10:45 p.m. also indicate that defendant was "arrested" at his sister's house at that same time.

volved" in the shooting was hardly information sufficient to constitute probable cause for arrest.

■ If defendant was under arrest when he was brought to the police station and if that arrest was without probable cause, the question then arises whether defendant's subsequent statement to the police was obtained as a direct result of the invalid arrest. (See *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 96 S. Ct. 2254.) The record reflects that defendant was "arrested" at 10:45 p.m. Though defendant spoke with Assistant State's Attorney Roddy at 4 a.m. the next day, he also spoke to the police officers sometime after his arrest but before Roddy arrived at the station. The record is unclear, however, as to what time between 10:45 p.m. and 3 a.m. defendant spoke with the police officers. Accordingly, based on the record, we cannot determine whether defendant's statement to the police was sufficiently attenuated from his arrest; an evidentiary hearing is thus necessary to determine the voluntariness of defendant's statements. See, e.g., *People v. Foskey* (1990), 136 Ill. 2d 66, 85, 554 N.E.2d 192.

■ Nevertheless, the State asserts that, even if defendant was arrested without probable cause, defense counsel's decision not to file a motion to suppress was a matter of trial tactics and thus not a proper basis for asserting ineffective assistance of counsel. None of the State's cases, however, are apposite. See *People v. Gierbolini* (1984), 128 Ill. App. 3d 794, 797, 471 N.E.2d 625 (holding the defendant's contention that had his attorney filed a motion to suppress based on unlawful entry into the defendant's apartment, the prosecution would have been prevented from introducing any evidence of possession of controlled substances to be "wholly speculative"); *People v. Bryant* (1989), 128 Ill. 2d 448, 458-59, 539 N.E.2d 1221 (holding that the defense counsel's failure to file motions to quash the arrest and suppress the statement of the defendant was not ineffective assistance of counsel where the public defender explained that her decision was strategic and that the defendant had assured her that he had made no statement to police).

More analogous to the instant case is the fact situation presented in *Downey* (198 Ill. App. 3d 704, 556 N.E.2d 300), where the court determined that the defense counsel's failure to challenge the defendant's arrest could have supported the defendant's petition for post-conviction relief and thus the circuit court had erred in dismissing that petition without an evidentiary hearing. (*Downey*, 198 Ill. App. 3d at 716-17.) The *Downey* court determined that there was a probability that motions to quash the arrest and to suppress subsequent statements to the police would have been successful had they been

filed, and if successful, the defendant might not have been convicted. Accordingly, the court reversed the circuit court's dismissal and remanded for an evidentiary hearing. *Downey*, 198 Ill. App. 3d at 717.

Though disputes as to trial tactics are rarely the basis for post-conviction relief (see *People v. Conley* (1983), 118 Ill. App. 3d 122, 454 N.E.2d 1107; *People v. Taylor* (1982), 110 Ill. App. 3d 112, 441 N.E.2d 1231), where, as *Downey* indicates, those "tactics" clearly may have denied a defendant a fundamental constitutional right, a court should hold an evidentiary hearing to determine if a defendant's rights were indeed violated. Because, in the case at bar, the record indicates that defendant's arrest may have been illegal and his statement to the police "the fruit of the poisonous tree," the circuit court erroneously dismissed defendant's petition without holding an evidentiary hearing, particularly where defendant would not have been convicted were it not for the admission into evidence of his statement. Moreover, because the circuit court, in dismissing defendant's petition, apparently harbored the misconception that it had heard from the arresting officers, the court's dismissal without an evidentiary hearing is suspect.

Here, though the record is by no means complete, we find that defendant has made a substantial showing of a violation of his constitutional right to effective assistance of counsel and his allegations are supported by the record and by affidavits. (See *Downey*, 198 Ill. App. 3d at 712.) Because the court's dismissal of defendant's petition without an evidentiary hearing was in error, we reverse the court's dismissal and remand for an evidentiary hearing where the circuit court will determine whether defendant was indeed arrested, whether his arrest was made without probable cause, and whether his statements were made as a result of an invalid arrest. See *Del Vecchio*, 129 Ill. 2d at 284.

Although we find that defendant is entitled to an evidentiary hearing on these issues, we emphasize that we make no determination regarding defendant's ultimate success on his petition. We hold only that, given the nature of defendant's allegations of ineffective assistance of counsel, the circuit court incorrectly dismissed the petition without conducting an evidentiary hearing. Consequently, we remand the cause for further consideration in accordance with sections 122—4 through 122—6 of the Post-Conviction Hearing Act (Ill. Rev. Stat. 1989, ch. 38, pars. 122—4 through 122—6).

## II

Defendant next contends that his trial counsel suffered from a

conflict of interest during trial which prejudiced defendant and thus the circuit court erred in dismissing his petition for post-conviction relief. Specifically, defendant maintains that he was denied effective assistance of counsel because his trial attorney failed to advise either him or the court that Federal charges were pending against the attorney.[3] The State responds that defendant's contention does not rise to the level of ineffective assistance of counsel.

. As stated previously, defendant is not entitled to a post-conviction evidentiary hearing unless he has made a substantial showing of a violation of a constitutional right and his allegations are supported by the record or by affidavits. (*Downey*, 198 Ill. App. 3d at 712.) Thus, the court's dismissal of defendant's petition will not be disturbed unless that determination was clearly erroneous. *Downey*, 198 Ill. App. 3d at 712-13.

In the instant case, the circuit court, in denying defendant's petition, stated that the fact that defendant's trial counsel was indicted on Federal charges did not rise to the level of "being a Constitutional deprivation because he didn't allow his client to make a considered waiver as to whether he wanted [the attorney] under those circumstances to continue to represent him." In so finding, the court stated that the evidence presented did not show "in any way that [defense counsel] allowed his personal matter to involve with his responsibilities as an attorney representing a client." Defendant, however, disagreed and suggested to the court that "the very failure to file the appropriate motions in and of itself [showed that defense counsel] was not paying attention to what he was doing at the time he was representing [defendant]."

Though a defendant is entitled to representation by counsel who is free of conflicting interests (*People v. Olinger* (1986), 112 Ill. 2d 324, 339, 493 N.E.2d 579), defendant's assertion that the mere pendency of criminal charges brands an attorney incompetent to defend a person charged with a crime does not necessarily follow. Nevertheless, relying upon *People v. Williams* (1982), 93 Ill. 2d 309, 444 N.E.2d 136, defendant argues that the charges against defense counsel, which counsel failed to disclose to him, affected his performance at trial and resulted in deficient representation.

In *Williams*, the defense counsel represented the defendant and two other codefendants before one jury, and simultaneously repre-

---

[3]Trial counsel's affidavit, attached to the State's motion to dismiss defendant's petition, alleged that defendant was apprised of the charges against his attorney and that he signed a waiver; no waiver, however, was attached to the affidavit.

sented a fourth defendant before another jury. All four defendants were charged with capital crimes, and the defendant was subsequently convicted and sentenced to death. Disciplinary proceedings were in progress at the time of trial and the attorney was subsequently disbarred. In *Williams*, the court relied upon the defendant's showing of "numerous instances of inaction by counsel to demonstrate that he was denied the effective assistance of counsel." (*Williams*, 93 Ill. 2d at 324.) Moreover, the *Williams* court's doubts about counsel's representation were accentuated by the burden of his simultaneous defense of four clients before two juries. (*Williams*, 93 Ill. 2d at 325.) Ordering a new trial for the defendant, the *Williams* court characterized the facts there as "unique circumstances and sequence of events *** which will rarely, if ever, be duplicated." *Williams*, 93 Ill. 2d at 325.

Though defendant urges this court to apply the reasoning used in *Williams*, that case and the other cases cited by defendant are inapposite. (See *People v. Flores* (1989), 128 Ill. 2d 66, 538 N.E.2d 481 (where defense counsel represented a State witness some time prior to the defendant's trial); *Olinger*, 112 Ill. 2d 324, 493 N.E.2d 579 (where the defendant was advised by the court that his attorney was being investigated for witness tampering); *People v. Kester* (1977), 66 Ill. 2d 162, 361 N.E.2d 569 (where defense counsel had prior to the defendant's trial been involved in his prosecution as an assistant State's Attorney).) Defendant's further reliance on *People v. Washington* (1990), 210 Ill. App. 3d 147, 568 N.E.2d 1279, is misplaced because that case, where the court, relying on *Williams*, found that the pendency of disciplinary proceedings established that an attorney was incompetent to defend a person charged with a crime, was vacated by the Illinois Supreme Court in a supervisory order and remanded to the appellate court for further consideration in light of *People v. Szabo* (1991), 144 Ill. 2d 525, 582 N.E.2d 173. See *People v. Washington* (1991), 142 Ill. 2d 663 (supervisory order).

In *Szabo*, the court limited the *Williams* decision, holding that it was "an aberration peculiar to the facts of that case." (*Szabo*, 144 Ill. 2d at 529.) The *Szabo* court refused to apply *Williams* to a case where the defendant urged a new trial solely on the basis of his counsel's problems with the Attorney Registration and Disciplinary Commission. Emphasizing that the defendant's post-conviction petition alleged only "two brief paragraphs" of deficient representation, the court held that the defendant failed to establish that his counsel's conduct fell below an objective standard. *Szabo*, 144 Ill. 2d at 530-31.

■ Here, we cannot say that trial counsel's pending criminal charges led to a *per se* conflict of interest; however, the record is not sufficient to determine whether counsel's failure to file motions to quash or suppress in and of itself indicates that defendant was prejudiced by a conflict. Though trial counsel stated in his affidavit that he intended to file a motion to suppress defendant's statement,[4] he further stated that he did not "because [defendant] failed to keep numerous appointments with a clinical psychologist." We are at a loss to explain why this would prohibit counsel's filing of the motion to suppress. Nevertheless, because the record presented in the instant case is slim, and because we remand to the circuit court, we direct the circuit court to consider this issue together with the previously discussed issue in the evidentiary hearing to be held on defendant's post-conviction petition.

### III

Defendant next contends that he was not proved guilty of murder beyond a reasonable doubt because the State did not provide any substantive evidence that he committed the crime, other than his own confession. Arguing that the State is required to provide independent evidence or corroborating evidence outside of his confession, defendant asserts that his conviction must be reversed.

Defendant, however, misinterprets the holding of the cases he cites. In *People v. Lambert* (1984), 104 Ill. 2d 375, 472 N.E.2d 427, the court, holding that the *corpus delicti* cannot be proved by a defendant's confession alone, found that there was no evidence of the crime of deviate sexual conduct with a child other than the defendant's confession. Because the State offered no evidence that a crime even occurred, the *Lambert* court held that the State could not support a conviction of the defendant on his confession alone. (*Lambert*, 104 Ill. 2d at 379-80.) The court further stated, though, that if there is some independent or corroborating evidence that establishes that a crime occurred, then that evidence may be considered with the confession to establish the *corpus delicti. Lambert*, 104 Ill. 2d at 379.

■ In the instant case, though there were no eyewitnesses to the shooting, the police did discover the body of Pedraza, who the medical examiner determined had died of a gunshot from a .25 caliber gun.

---

[4]Despite his statement in his affidavit that he "intended to file a motion to suppress" defendant's statement, trial counsel's affidavit contradictorily states that "it was my opinion that there was sufficient probable cause to support [defendant's] arrest."

Moreover, defendant's confession was corroborated by the physical evidence found at the scene of the shooting: among other things, defendant described the alley, identified the caliber of pistol used to shoot Pedraza, and described the type of car which Pedraza had driven prior to being shot.

Accordingly, we find that the State is correct in its assertion that the evidence, when viewed in a light most favorable to the prosecution, supports the circuit court's determination that, based on the evidence presented at trial, defendant was proved guilty of murder beyond a reasonable doubt. *People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 453.

## IV

Defendant lastly contends that the circuit court erred in denying his motion to strike the State's affidavit supporting its motion to dismiss defendant's post-conviction petition. Specifically, defendant asserts that the affidavit of his trial counsel contained inadmissible conclusional opinions and was not supported by factual evidence.

Relying on Supreme Court Rule 191(a), defendant maintains that trial counsel's affidavit, which asserted that defendant failed to keep scheduled appointments with counsel and did indeed sign a "waiver" acknowledging counsel's pending Federal charges, was conclusional and failed to support its contentions with the alleged "waiver" or any other documentation. The State responds that Rule 191(a) is inapplicable to criminal post-conviction affidavits and that defendant's reliance upon *Simpson v. Irving* (1981), 99 Ill. App. 3d 176, 425 N.E.2d 62, is misplaced.

In *Simpson*, an inmate of a State prison filed a *mandamus* petition alleging that the chairman of the Illinois Prison Review Board was denying him almost two years' credit off his sentence. The Department of Corrections filed a motion to dismiss the petition, supported by an affidavit alleging that the inmate's sentence had already been recalculated. Though the circuit court dismissed the petition, the appellate court reversed, finding that the affidavit did not comply with Rule 191(a) in that it was conclusional and did not provide supporting documents. (*Simpson*, 99 Ill. App. 3d at 178.) The court further emphasized that the "wholly deficient" affidavit was substantially the only evidence offered by the Department of Corrections. *Simpson*, 99 Ill. App. 3d at 179.

Though defendant, in the case *sub judice*, urges this court, like the court in *Simpson*, to apply Rule 191(a), the State argues that Rule 191(a), by its own terms, applies only in civil cases and does not apply

in criminal cases. (See *People v. Frieder* (1980), 90 Ill. App. 3d 116, 121, 413 N.E.2d 432.) Rule 191(a) provides that affidavits filed in support of and in opposition to motions for summary judgment, for involuntary dismissal, and to contest personal jurisdiction "shall set forth with particularity the facts upon which *** the defense is based; *** shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." (134 Ill. 2d R. 191(a).) Accordingly, the State contends that Rule 191(a) does not apply to criminal proceedings.

■■ We find that Rule 191(a) is inapplicable to criminal proceedings and thus hold that the court did not err in refusing to strike the affidavit. We emphasize, however, that the affidavit is rife with conclusional statements and even contradictions. As such, the circuit court must judge the affidavit's weight accordingly.

Based upon the foregoing, the judgment of the circuit court of Cook County denying defendant's post-conviction petition is reversed and the cause is remanded for an evidentiary hearing on defendant's petition.

Reversed and remanded.

SCARIANO and McCORMICK, JJ., concur.