THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DOUGLAS C. BRANNON, Defendant-Appellee.

Fourth District    No. 4—98—0950

Argued September 23, 1999.—Opinion filed November 8, 1999.

Larry S. Mills, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and James C. Majors (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Carlton M. Kagawa (argued), of Law Offices of Carlton M. Kagawa, of Danville, for appellee.

JUSTICE GARMAN delivered the opinion of the court:

In July 1997 the State indicted defendant, Douglas C. Brannon, on possession of more than 30 but less than 500 grams of cannabis with intent to deliver (720 ILCS 550/5(d) (West 1996)), possession of more than 30 but less than 500 grams of cannabis (720 ILCS 550/4(d) (West 1996)), and unlawful use of a weapon by a felon (720 ILCS 5/24—1.1(a) (West 1996)). In November 1998, the trial court granted defendant's motion to suppress evidence and quash his arrest upon its finding that the evidence against defendant was obtained in an illegal search of his vehicle. The State brings this interlocutory appeal pursuant to Supreme Court Rule 604(a). 145 Ill. 2d R. 604(a).

## I. BACKGROUND

In December 1996, police officer Rhonda Swisher, a member of the Vermilion County Metropolitan Enforcement Group (VMEG), picked up a Crimestoppers' report from the VMEG mailbox at the Danville police station. (Crimestoppers' reports are taken over the phone by a

police officer who records the tip on a Crimestoppers' report form. Callers can remain anonymous but are assigned a number when they file a report. The Crimestoppers program allows for payment to tipsters under certain conditions; the report form contains a section where the recording officer indicates whether the informant is interested in a reward. In this case, the officer noted "yes" in that section.)

The Crimestoppers' report advised that Douglas Brannon, a convicted felon, had a gun and approximately one-half pound of cannabis in the trunk of his car. The report also contained the following details: Brannon lived in the 1300 block of Chandler; he was a white male with black hair, 5 feet 5 inches tall, and 130 pounds; he worked at Lowell's grocery store; and he drove a 1986 black and gray Chrysler LeBaron with a broken or missing rearview mirror.

After receiving the report, Swisher, who already knew of defendant, took several steps to corroborate the details of the report. She first ran a criminal history, and according to her testimony at the suppression hearing, it revealed that defendant had "three dangerous drug offenses arrests, three weapon offenses arrests, with one conviction for dangerous drugs." Swisher spoke with a colleague, Agent Mark Peyton, who told her that he had executed a search warrant at defendant's residence 10 months earlier and had recovered 40 grams of cannabis and a cannabis plant. Swisher also ran a Secretary of State Soundex, which revealed that Brannon lived at 1324 Chandler and owned a 1986 Chrysler four door. Swisher called Lowell's grocery store and verified that Brannon was an employee and would be starting a shift at 4 p.m. that day. She then parked outside Brannon's address and began surveillance.

At about 3:30 p.m., Swisher saw defendant pull out of his driveway. He was driving a gray and black car and the rearview mirror was missing. Swisher followed Brannon in her unmarked car and radioed for a marked unit to make a traffic stop. Over the radio she indicated the driver was "possibly on route with a handgun." Defendant was traveling a route one would logically take to Lowell's grocery store.

In the 1300 to 1400 block of Vermilion, Lieutenant Richard pulled defendant over. Swisher pulled up behind Richard's car; special agent Mark Peyton arrived in a separate unmarked vehicle; and Officers Moreman and Crippin also arrived in separate cars.

Swisher advised defendant that he was pulled over because the police had obtained information that he was carrying a gun and a half pound of marijuana in the trunk of his car. Testimony differed somewhat as to the details of the conversations that followed. Swisher testified that defendant told the officers all he had in the trunk were some coins and that defendant was nervous.

Peyton testified that defendant was extremely nervous, avoided his gaze, and moved around quite a bit. Peyton further testified that he asked defendant if he could search the trunk; defendant said he did not want him to search the trunk; Peyton then took the keys out of the ignition, opened the trunk, and discovered the cannabis and a semiautomatic handgun.

Defendant was arrested and, after a hearing in October 1998, the trial court granted defendant's motion to suppress the evidence and quash his arrest. The trial court made the following findings:

"1. That on December 3, 1996, the [d]efendant was stopped by Danville [p]olice [o]fficers on a city street while driving his motor vehicle.

2. That the Danville [p]olice searched the [d]efendant's locked car trunk, and that the [d]efendant did not give his consent to search the trunk.

3. That the information given in the anonymous call to 'Crimestoppers' *** was not sufficiently tested for its reliability.

4. That there was insufficient corroboration of the information furnished in the call to 'Crimestoppers' to justify the search of the [d]efendant's car trunk.

5. That, under the totality of the circumstances, there was insufficient grounds to establish probable cause of the search of the [d]efendant's car trunk.

6. That the search and seizure in this case violated the [d]efendant's [c]onstitutional [r]ights."

This appeal followed.

## II. ANALYSIS

■ The trial court's decision on a motion to quash and suppress will not be disturbed on review unless it is determined to be clearly erroneous. *People v. Foskey*, 136 Ill. 2d 66, 76, 554 N.E.2d 192, 197 (1990). However, when only the trial court's legal conclusions are at issue, we review those conclusions *de novo*. *People v. Gray*, 305 Ill. App. 3d 835, 837-38, 713 N.E.2d 781, 782 (1999).

■ ■ "When a police officer has proceeded without a warrant to search, seize evidence, or arrest a person, the trial court making a probable-cause determination is to apply standards at least as stringent as those that guide a magistrate in deciding whether to issue a warrant." *People v. Tisler*, 103 Ill. 2d 226, 236, 469 N.E.2d 147, 153 (1984). Whether probable cause exists is determined by the trial court based on the totality of the circumstances present. *Foskey*, 136 Ill. 2d at 76, 554 N.E.2d at 197. "[P]robable cause does not demand the certainty we associate with formal trials." *Illinois v. Gates*, 462 U.S. 213, 246, 76 L. Ed. 2d 527, 553, 103 S. Ct. 2317, 2336 (1983). " '[O]nly

the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.' " *Gates*, 462 U.S. at 235, 76 L. Ed. 2d at 546, 103 S. Ct. at 2330, quoting *Spinelli v. United States*, 393 U.S. 410, 419, 21 L. Ed. 2d 637, 645, 89 S. Ct. 584, 590 (1969). The trial court must determine whether " 'a reasonable and prudent man, having the knowledge possessed by the officer at the time of the arrest, would believe the defendant committed the offense.' " *Tisler*, 103 Ill. 2d at 237, 469 N.E.2d at 153, quoting *People v. Wright*, 41 Ill. 2d 170, 174, 242 N.E.2d 180, 183 (1968). Probable cause to arrest can be based on an informer's tip, if that tip is found to be reliable. *Foskey*, 136 Ill. 2d at 76, 554 N.E.2d at 197. Probable cause determinations are made on a case-by-case basis. *People v. Thompkins*, 121 Ill. 2d 401, 435, 521 N.E.2d 38, 52 (1988).

The question before us is whether, from the perspective of a reasonable person in Swisher's position, the tip, the corroboration of its details, and the officers' observations of defendant made it fairly probable that contraband would be found in defendant's car. See *People v. Adams*, 131 Ill. 2d 387, 398, 546 N.E.2d 561, 566 (1989). We conclude that it did.

## A. Corroborating Information

■ Probable cause cannot be based on an anonymous tip that merely provides the static details of a suspect's life along with an allegation of criminal conduct. See *People v. Yarber*, 279 Ill. App. 3d 519, 529, 663 N.E.2d 1131, 1138 (1996). Further inquiry, however, can inform an investigating officer whether the information provided by the tipster is more or less likely to be true. If, after such inquiry, the officer reasonably concludes that a fair probability exists that the accused has committed or is committing the offense alleged, probable cause exists.

In this case, Swisher's inquiry revealed two things that bear directly on the reliability of the tip. First, she learned that defendant had two prior arrests and one prior conviction for crimes identical to those alleged by the tipster, that is, possession of drugs and weapons. Second, Swisher learned from Peyton that a large quantity of cannabis had been found at defendant's residence 10 months prior. Peyton's information was pertinent because it increased the likelihood that what the tipster predicted, that the defendant would possess cannabis, was probable.

■ We emphasize that it is the nature of defendant's prior police contacts that bear on the reliability of the tip, not their mere existence. Had defendant's prior arrests and convictions been for unrelated offenses, such as burglary or assault, they would have no bearing

on the reliability of this tip. Likewise, if the search of defendant's residence 10 months prior had been fruitless, or had turned up contraband other than cannabis, it would be of little significance. The goal of corroboration is to reduce the chance of acting on a " 'reckless or prevaricating tale' " and establish a basis for crediting the tip. *Gates*, 462 U.S. at 244-45, 76 L. Ed. 2d at 552, 103 S. Ct. at 2335, quoting *Jones v. United States*, 362 U.S. 257, 271, 4 L. Ed. 2d 697, 708, 80 S. Ct. 725, 736 (1960). The information regarding defendant's prior police contacts corroborated both the type of activity and the type of contraband alleged in the tip. Thus, its existence made it less likely that the tip was baseless.

Seemingly analogous cases reaching the opposite conclusion are distinguishable. In *People v. Moraca*, 124 Ill. App. 3d 561, 464 N.E.2d 312 (1984), and *People v. Wilson*, 260 Ill. App. 3d 364, 632 N.E.2d 114 (1994), the police did not rely on information obtained through criminal records or prior police contacts. In *Yarber*, 279 Ill. App. 3d at 523, 663 N.E.2d at 1134, a criminal records check confirmed only the suspect's race, height, and weight. In *People v. Downey*, 198 Ill. App. 3d 704, 556 N.E.2d 300 (1990), and *City of Lake Forest v. Dugan*, 206 Ill. App. 3d 552, 564 N.E.2d 929 (1990), the tips lacked detail to a significantly greater degree than the tip at issue here. In *Adams*, 131 Ill. 2d 387, 546 N.E.2d 561, where the court held that corroboration of the defendant's criminal record was, standing alone, insufficient corroboration, the defendant's prior conviction was for voluntary manslaughter while the tip alleged that the defendant was trafficking cocaine.

In *People v. Pantoja*, 184 Ill. App. 3d 671, 672-73, 540 N.E.2d 892, 892-93 (1989), an anonymous citizen's complaint alleged that the defendant, Pantoja, had a handgun and had just left a certain location in a certain vehicle. The arresting officer knew Pantoja and his vehicle and that he was a gang leader. The officer also knew that, roughly seven months prior, Pantoja had been present in an area where shots were fired and a gun had been found. The Second District Appellate Court held that the police did not have probable cause for a *Terry* stop. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The case at bar is distinguishable on two factual points. First, Pantoja was seen "in the area" where a gun was found, while in the case at bar, cannabis was found at the defendant's residence. Second, in *Pantoja*, no mention is made of prior arrests or convictions for weapons offenses. See also *People v. Culbertson*, 305 Ill. App. 3d 1015, 1024, 713 N.E.2d 794, 802 (1999) (held, police officers had reasonable suspicion justifying a *Terry* stop when they acted on an untested informant's tip after their own inquiry revealed that the defendant had previously been arrested for burglary, the offense alleged by the tipster).

## B. The Inherent Reliability of the Tip

### 1. The Crimestoppers' Line

■ Defendant contends that the tip is inherently suspect because the tipster indicated an interest in a monetary reward. We disagree. Tips given in exchange for payment have heretofore been considered less reliable than tips provided by citizen informants because we presume that citizen informants act out of an interest in aiding law enforcement efforts, not for personal gain. See *Adams*, 131 Ill. 2d at 397, 546 N.E.2d at 565-66. A tip called in to a Crimestoppers' line is more likely than not provided by a citizen informant. The quintessential paid informant, whose motives are presumably suspect, does not call a tip in to the Crimestoppers' line but arranges to receive payment up front. Although awards are available to Crimestoppers' tipsters under certain conditions (payment is likely awarded for tips that lead to arrests and/or convictions or tips that otherwise further an ongoing investigation), the tipster may not know what those conditions are when calling in a tip, and a tipster would therefore not likely assume that an award would be made for a baseless tip. The Crimestoppers system seems designed to encourage reliable tips and discourage fraudulent ones. Thus, the tipster's indicating an interest in an award, should one be available, has no bearing on the tipster's reliability and does not taint the tip. Moreover, as the Supreme Court of Illinois stated in *Adams*, 131 Ill. 2d at 396-97, 546 N.E.2d at 565:

> "The central issue is not the rigid classification of the informant as an ordinary citizen or a paid informant but, rather, whether the information, taken in its totality, and interpreted not by technical legal rules but by factual and practical commonsense considerations, would lead a reasonable and prudent person to believe that the person stopped had committed an offense."

### 2. The Details of the Tip

■ When considering corroborated facts, the question is not whether the facts corroborated are innocent or incriminating, but whether the corroboration of those facts gives rise to an inference that the informant is credible and that he obtained his information in a reliable manner. See *Tisler*, 103 Ill. 2d at 251, 469 N.E.2d at 160. In this case, Swisher corroborated all of the "innocent details" provided by the tipster. She verified the description of defendant, a detailed description of his car, his address, and his place of employment. While corroboration of these details alone would not be a sufficient basis for probable cause, they do lend credibility to the tipster. As the Supreme Court of Illinois wrote in *Tisler*, 103 Ill. 2d at 238, 469 N.E.2d at 154, "[w]hen a tip is proved accurate on some counts, *** the informant is

more likely correct about other details, including the alleged illegal activity."

Also significant is the specificity with which the tipster described defendant's criminal conduct. The tipster reported that defendant would have approximately one-half pound of cannabis and a gun in the trunk of his car. Notably, the tipster provided a specific (albeit not exact) quantity of a specific type of contraband and indicated it would be in defendant's trunk, as opposed to in his car generally. While these facts are conclusory allegations, their specificity indicates that the tipster had knowledge of defendant's habits and activities and that the tip was not merely a "prevaricating tale."

We hold that under the circumstances present in this case, a reasonable officer in Swisher's position, with the knowledge she had at the time, could conclude that it was fairly probable contraband would be found in defendant's car. To reiterate, the critical factors present in this case and upon which we base our decision follow: (1) The tip was left on the Crimestoppers' line, (2) all of the innocent details of the tip were corroborated, (3) the tip alleged criminal conduct in detail, and (4) further investigation revealed that defendant had a history involving the same conduct as alleged by the tipster.

## III. CONCLUSION

For the reasons stated, we reverse the trial court's ruling and remand for further proceedings not inconsistent with this order.

Reversed.

STEIGMANN and McCULLOUGH, JJ., concur.