JAM PRODUCTIONS, LTD., Plaintiff-Appellee, *v.* DOMINICK'S FINER FOODS, INC., Defendant-Appellant.

Second District No. 83—563

Opinion filed December 12, 1983.

Sidney N. Herman and Jonathan B. Newcomb, both of Kirkland & Ellis, of Chicago, for appellant.

Murray R. Conzelman and John M. Mullen, both of Conzelman, Schultz, Snarski & Mullen, of Waukegan, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, Jam Productions, Ltd., instituted this breach of contract action against defendant, Dominick's Finer Foods, Inc., in the circuit court of Lake County, Illinois. These parties are also involved in a class action suit involving the same general subject matter, pending in the circuit court of Cook County, Illinois. Defendant moved the circuit court of Lake County to stay those proceedings, pending the resolution of the Cook County class action. That motion was denied. Defendant now appeals pursuant to Supreme Court Rule 307 (87 Ill. 2d R. 307). We reverse.

The parties to this appeal, together with Field Communications Corp., Southland Corp., Convenient Food Marts, Inc., 3-D Video Corp., and certain other individuals were involved in a promotion to air a 1955 movie entitled "Revenge of the Creature" in a newly-developed "3-D" format for television. The show was to be broadcast on WFLD—Channel 32 TV on July 29, 1982. Various chain stores, including the defendant, contracted to distribute special 3-D viewing glasses supplied by plaintiff. Plaintiff contracted to provide the defendant with 3-D glasses "suitable" for use in viewing "Revenge of the Creature." Distributing stores, including the defendant, publicly promoted the airing of the "Creature" through various advertising media.

On the day following the airing of "Revenge of the Creature," parties who had purchased 3-D glasses from the defendant and others sought their own form of revenge, though the vehicle of a class action suit filed in the circuit court of Cook County (the *Harris* action). The plaintiff was not named as a party defendant in the *Harris* action.

The defendants in the *Harris* action were charged with breach of express warranty, breach of implied warranty, fraud, breach of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 262), and the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 311 *et seq.*) The alleged underlying factual basis for all of these counts was that the 3-D glasses supplied by the defendant and the other distributors did not perform as had been warranted. Apparently, the "Creature" did not appear in 3-D, much to the displeasure and disappointment of class members.

It was alleged in the defendant's pleadings (and it is now not disputed by the parties), that the defendant notified the plaintiff of the pendency of the *Harris* action four days after it was filed, pursuant to section 2—607(5)(a) of the Uniform Commercial Code (Ill. Rev. Stat. 1981, ch. 26, par. 2—607(5)(a)). The plaintiff declined to assume the defense of that lawsuit.

On November 3, 1982, the plaintiff filed the instant breach of contract action against the defendant in the circuit court of Lake County. The defendant appeared and moved for a stay of proceedings on December 3, 1982. After the cause was transferred to another judge (on plaintiff's motion), the defendant refiled its motion for a stay before Judge Harry D. Strouse, Jr. That motion, as it stood before Judge Strouse, alleged that the defendant had *moved* for leave to file a third-party complaint against the plaintiff in the *Harris* action, which third-party complaint involved substantially the same subject matter as was then before the Lake County circuit court. Judge Strouse denied the motion for stay. The defendant thereafter answered the plaintiff's complaint.

The defendant filed a third motion for stay before Judge Strouse on February 7, 1983. This motion alleged that the defendant had been *granted* leave to file its third-party complaint against the plaintiff in the *Harris* action, and that the plaintiff had become impleaded in that suit. Following a series of continuances, the defendant again filed a copy of its motion for stay in the circuit court on March 23, 1983.

The matter was thereafter continued twice more. Then, the cause was transferred (on defendant's motion) to be heard by Judge Lawrence D. Inglis.

Following that transfer, yet another incarnation of the defendant's motion for stay was filed on May 5, 1983. This motion had grown to become 56 pages in length, including exhibits.

The circuit court denied the defendant's motion for stay on May 19, 1983. The circuit court found that the defendant's motion for stay had been filed on five separate dates, and that its repeated filing had placed "a burden on the court system." The court observed that another judge had denied the defendant's motion for stay on December 20, 1982, and that there was "no showing of a change in circumstances since the last ruling."

The circuit court found that the defendant, through its repeated filing of its motion for stay, had delayed the litigation from December 3, 1982, until the date of its ruling (May 19, 1983). The circuit court concluded that "as a result of plaintiff's [*sic*] action there has been an effective stay for a reasonable length of time in Lake County and this matter should not be delayed further without significant advancement of the matter filed in Cook County." This appeal ensued.

Two issues are presented:

1. Whether the circuit court abused its discretion when it denied the defendant's motion for a stay of proceedings pending the resolution of a similar suit involving the parties which was

filed in a sister county.

2. Whether this court lacks supervisory authority over the administration of the Lake County circuit court and, therefore, must deny the defendant's request for the entry of a supervisory writ to that court.

■ The first issue in this interlocutory appeal is whether the circuit court abused its discretion when it denied the defendant's petition for a stay of proceedings pending the outcome of the *Harris* action. (*Schlenz v. Castle* (1980), 80 Ill. App. 3d 1131, 1135, *modified on other grounds* (1981), 84 Ill. 2d 196, *appeal dismissed* (1981), 454 U.S. 804, 70 L. Ed. 2d 73, 102 S. Ct. 76.) We are of the opinion that a stay should have been entered, and accordingly we reverse.

When determining whether to stay the latter of two suits brought concerning a given controversy, the courts consider a number of factors which include: "comity; prevention of multiplicity, vexation and harassment; likelihood of obtaining complete relief in the foreign jurisdiction; and the *res judicata* effect of a foreign judgment in the local forum." (*A.E. Staley Manufacturing Co. v. Swift & Co.* (1980), 84 Ill. 2d 245, 254.) Here, the *Harris* action was filed prior to the plaintiff's complaint in this cause. The plaintiff was given an opportunity pursuant to section 2—607(5)(a) of the Uniform Commercial Code (Ill. Rev. Stat. 1981, ch. 26, par. 2—607(5)(a)), to enter into that suit and litigate, *inter alia*, the factual dispute regarding the suitability of the 3-D glasses it supplied to the defendant, for use in viewing the televised 3-D broadcast. Instead, the plaintiff chose to file a separate suit in Lake County, Illinois, in which it must have known that an issue regarding the sufficiency of the 3-D glasses would arise. The question before this court is whether the circuit court abused its discretion when it refused to stay the Lake County suit, as the latter of two suits brought on this single factual controversy involving both parties.

The defendant advances two significant reasons why a stay of the Lake County action would be appropriate. First, it is alleged that a stay is necessary to protect the defendant from the risk of inconsistent judgments. Second, the defendant asserts that a stay is required to prevent needless duplicitous litigation between the parties. The plaintiff, in its appellate brief, nowhere denies the existence and viability of each of these grounds for the entry of a stay.

The defendant is quite correct that the concurrent pendency of both the *Harris* and Lake County actions might require it to "pay twice"; a finding entered in the *Harris* action that the glasses were defective would subject the defendant to liability to the class; a finding in the Lake County action that the glasses were *not* defective

would subject the defendant to liability to the plaintiff. The pivotal factual controversy common to each lawsuit involves the quality of the 3-D glasses supplied by the plaintiff to the defendant (who in turn sold them to *Harris* class members).

The plaintiff does not dispute that the plaintiff could become subject to conflicting judgments if the Lake County action is not stayed. Under Illinois case law, the grant of such a stay is necessary, as a matter of fairness, to safeguard the defendant from the possibility of double liability. See *People ex rel. Department of Public Aid v. Santos* (1982), 92 Ill. 2d 120, 131.

Nor does the plaintiff dispute that the stay of its Lake County suit would avoid wasteful, duplicative litigation between the parties. Given the pendency of the defendant's third-party complaint against the plaintiff in the *Harris* action, the plaintiff could assert its present cause of action against the defendant as a counterclaim to the defendant's third-party complaint. (See Ill. Rev. Stat. 1981, ch. 110, pars. 2—406(b), 2—608.) Moreover, other parties who might be liable over to the plaintiff in the event that the 3-D glasses are ultimately found to be defective, are already parties to the *Harris* action. We conclude that the plaintiff can obtain complete relief against the defendant in the *Harris* action, and that there is no counterbalancing reason appearing of record, which would otherwise justify the maintenance of separate suits in sister counties regarding the factual transaction involved herein.

We note that the defendant's conduct in the prosecution of its request for a stay in the Lake County action appears from the record to be both diligent and straightforward. The plaintiff's allegations to the contrary must be based upon a misconstruction of the record. The defendant first requested a stay on the date it formally appeared in the Lake County suit. Judge Jack Hoogasian, who initially presided over this suit, granted the plaintiff's motion for a change of judge before he had an opportunity to pass on the defendant's motion for a stay. The defendant's motion for a stay was ruled upon for the first time by Judge Strouse on December 29, 1982, a date which preceded the defendant's filing of its third-party complaint against plaintiff in the *Harris* action.

*After* the defendant filed its third-party complaint in the *Harris* action, it again moved for a stay of the Lake County proceedings alleging this change in circumstances. The cause was transferred to the courtroom of Judge Inglis before Judge Strouse had an opportunity to rule upon the defendant's new motion for stay. The plaintiff is simply incorrect in its assertion that the defendant presented "the same"

motion for a stay before three different circuit court judges, and that such motion was denied by the court on five separate occasions. The opposite is apparent from the record, in that the defendant appears to have diligently and in good faith pursued its request for a stay. In this regard, it is noted that the delay encountered in the Lake County litigation between December 1982 and May 1983 was *not* attributable to the defendant's motion for a stay. Instead, it appears of record that the defendant's motion for a stay was repeatedly continued, pending disposition of the plaintiff's motion for summary judgment.

■ Indeed, there seems to be no support in the record for the circuit court's finding that the defendant's refiling of its motion for a stay was responsible for the delay of the Lake County suit since December 1982. The circuit court, furthermore, was incorrect in its finding that the defendant failed to demonstrate a change in circumstances since December 1982, which would merit the grant of its request for a stay. The defendant's filing of its third-party complaint in the *Harris* action was such a change in circumstances. Although the circuit court may have correctly noted that the defendant's repeated refiling of its lengthy motion for a stay was an unnecessary, abusive practice, this factor alone cannot overcome the positive reasons cited by the defendant in favor of the grant of its motion for a stay.

We do not accept the plaintiff's conclusions regarding the general state of class action litigation in Cook County, Illinois, without some factual basis in the record to support those conclusions. The plaintiff is correct in its observation that the circuit court could properly decline to stay the Lake County action, if it found that the parties in the *Harris* action were not diligently advancing that litigation. (See *Medline Industries, Inc. v. Pascal* (1974), 23 Ill. App. 3d 346, 349-50.) However, the plaintiff is factually incorrect in its assertion that the circuit court in this case reviewed the progress of the *Harris* action on five separate occasions, and found it to be inadequate.

On remand, the circuit court should consider an updated assessment of the progress of the *Harris* action, in determining the terms and length of the stay of the Lake County proceedings.

■ The defendant, as an alternate contention, has requested this court to exercise its alleged supervisory authority over the circuit court and enter a supervisory writ requiring such court to grant the defendant's motion for a stay. However, supervisory authority over the circuit court of Lake County rests with the Supreme Court of this State. (Ill. Const., art. VI, sec. 16; see *Horn v. Rincker* (1981), 84 Ill. 2d 139, 149.) This court, therefore, lacks authority to grant the

defendant's prayer for the entry of a supervisory writ.

In view of the foregoing, we reverse the judgment of the trial court. We grant the defendant a stay. We remand to the trial court for that court to determine the terms of the stay and its length.

Reversed and remanded.

LINDBERG and NASH, JJ., concur.