THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
GEORGE DOGGETT, Defendant-Appellant.

Fifth District   No. 5—90—0707

Opinion filed December 14, 1993.—Rehearing denied January 12, 1994.

Daniel M. Kirwan and Rita K. Peterson, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

William Haine, State's Attorney, of Edwardsville (Norbert J. Goetten, Stephen E. Norris, and Debra Buchman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE LEWIS delivered the opinion of the court:
Defendant, George Doggett, appeals from the circuit court's dismissal of his post-conviction petition. On appeal, defendant contends that (1) the court erred in denying him an evidentiary hearing on his post-conviction petition wherein he alleged he was denied his right to effective assistance of trial counsel where a *per se* conflict of interest existed and (2) he must be allowed to file a new post-conviction petition, must be appointed new counsel, and must be given a hearing on the petition since defense counsel did not comply with Supreme Court Rule 651(c). (134 Ill. 2d R. 651(c).) We affirm for the reasons set forth below.

Defendant was convicted by a jury of the offense of murder (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)) on January 16, 1981, for the beating death of an eight-month-old baby girl, the daughter of a woman he was living with at the time. He was sentenced to an extended term of 60 years' imprisonment for the murder conviction. Defendant's conviction was affirmed on direct appeal in an order issued pursuant to Supreme Court Rule 23 (87 Ill. 2d R. 23). (*People v. Doggett* (1984), 121 Ill. App. 3d 1164, 472 N.E.2d 1246 (unpublished order under Supreme Court Rule 23).) The facts of the underlying crime were set forth in sufficient detail in the direct appeal; therefore, only those facts essential to this appeal will be delineated.

Defendant was charged by information for the offense of murder on October 20, 1980. An order of the court entered that same date indicated that defendant was to be represented by private counsel, William C. Evers III (Evers), and on November 10, 1980, Evers formally entered his appearance. Two documents were filed with the court on November 12, 1980, one entitled "Attorney's Disclosure of Conflict of Interest" (Disclosure) and the other entitled "Defendant's Receipt and Waiver" (Waiver). In these two documents, it was stated that Evers was a special assistant Attorney General who represented

182

the State as respondent before the Illinois Industrial Commission in workers' compensation cases, and that the courts have determined that his employment as a special assistant Attorney General presents a conflict of interest if Evers acts as defense counsel in a criminal case. It was further stated in the Disclosure that defendant could waive this conflict and employ Evers so long as defendant's waiver was freely made upon full disclosure of the facts. The Waiver stated that defendant understood the conflict posed by Evers' employment with the Attorney General's office but that he waived the conflict.

Subsequently, defendant was tried by a jury in a five-day trial which commenced on January 12, 1981, and ended on January 16, 1981. At trial, the evidence presented by the State established that defendant was living with Lucy Fickinger on October 17, 1980. On that date, Lucy arrived home from work at about 6 p.m., after picking up her three children from the babysitter's house. The youngest of her three children, Brandy Fickinger, was eight months old at that time. Defendant was already home when Lucy arrived. Lucy placed Brandy in her crib with a baby bottle, and Brandy appeared to be healthy at this time. Lucy then went to purchase a few groceries, taking her two oldest children with her but leaving Brandy at home alone with defendant. When Lucy returned from the store approximately 20 to 30 minutes later, she looked in on Brandy and discovered that Brandy was gasping for breath. Lucy had defendant call an ambulance, but when the ambulance arrived, Brandy was already dead. The ambulance personnel attempted to revive Brandy without success. Because Lucy was extremely upset, the ambulance personnel suggested that defendant take Lucy someplace where someone would comfort her but asked that defendant return as it would be necessary for someone to answer questions. The defendant took Lucy to his cousin's home and returned to the mobile home where he and Lucy lived.

While defendant was gone, the ambulance personnel called the coroner. A deputy coroner arrived, examined Brandy, and pronounced her dead. However, because the deputy coroner noted extensive bruising on Brandy under her clothing, he called the Granite City police department, which conducted an investigation into Brandy's death. The police officers interviewed defendant that Friday evening, at which time defendant told the officers he had not checked on Brandy while Lucy was gone and that he had been in the shower cleaning up to go to an anniversary dinner at his parents' during the time he was alone with Brandy.

On Saturday morning, October 18, 1980, an autopsy was done on Brandy. The autopsy revealed that Brandy had three skull fractures and had four lacerations of her liver.

Defendant was reinterviewed by the police on October 18, 1980, and he reiterated the same statement as he had the day before. However, on Sunday, October, 19, 1980, defendant asked to speak to a detective of the Granite City police department. Defendant told this detective that he had dropped Brandy while Lucy was at the store buying groceries. According to defendant, Brandy started crying while he was in the shower, so he got out of the shower and picked Brandy up out of the crib while he was still wet from his shower. Brandy fell out of his hands and hit her back on the rail of the crib. She then fell to the floor, hitting the right side of her head. Defendant admitted that it was his dropping of Brandy that caused her death.

The medical testimony at trial established that Brandy's injuries had to have been the result of extreme force. Further, the doctors testified that Brandy's extensive injuries could not have been incurred by dropping her in the manner which defendant had alleged, but that she had been struck by a blunt object.

Defendant presented no evidence in his defense.

After the trial was over, but before sentencing, a "Waiver of Conflict" signed by defendant was filed on January 19, 1981, and a motion to withdraw as defendant's attorney was filed by Evers on January 22, 1981. A hearing was held on Evers' motion to withdraw as counsel on January 28, 1981. At this hearing, Evers explained that he was retained by defendant's parents in October 1980, and at that time, he advised them that he would not be handling defendant's appeal should one be necessary. Attorney John Rekowski, who was present at this hearing, had been retained to handle defendant's appeal by defendant's parents. Evers stated that he had turned his files over to Rekowski, and that Rekowski was to draw up the post-trial motion and was to handle the sentencing hearing and the appeal. Evers further stated that he was going to be an assistant State's Attorney in this county, "possibly in the month of February." Evers had advised his client and defendant's parents of this fact and defendant had signed a waiver the previous week regarding this situation (the January 19, 1981, waiver). Therefore, Evers sought to withdraw as defendant's attorney.

Defendant was also present at this hearing and was questioned by the court. Defendant stated that he wanted Rekowski to represent him and that he had no objection to Evers' withdrawal from his case. Defendant was asked by the court if he understood that Evers was

going to work in the State's Attorney's office, and defendant responded affirmatively. When questioned whether he knew of Evers' employment with the State's Attorney prior to trial, Rekowski advised defendant not to answer as error, if any, had already been committed. Evers was then granted leave to withdraw from defendant's case by the court. Defendant's new counsel filed a post-trial motion and conducted defendant's sentencing hearing.

The waiver signed by defendant on January 19, 1981, stated in pertinent part as follows:

"I, George L. Doggett, Jr., having been convicted, after a trial by jury, of the offense of murder, have been informed that my attorney, William C. Evers III, has been offered employment by the Madison County State's Attorney's Office; that he wants to accept said employment; that the prosecutor in my case is the Madison County State's Attorney's office.

\* \* \*

I further understand that it would be a conflict for William C. Evers III to represent me and be an Assistant State's Attorney for Madison County. \*\*\* I waive any conflict, and will not raise any conflict on appeal or post-conviction remedy, that may arise as a result of William C. Evers III becoming an Assistant State's Attorney on or about January 19, 1981, and continuing to assist my new attorney in the post-trial procedures of my case."

Defendant filed his post-conviction petition on May 31, 1989. In his post-conviction petition, defendant alleged that Evers' employment as his attorney and his future role as an assistant State's attorney presented a *per se* conflict of interest, but he did not raise Evers' conflict of interest based upon Evers' employment as a special assistant Attorney General while also his defense counsel. Defendant alleged that Evers had been appointed but had not assumed his role of assistant State's Attorney at the time of trial, and that Evers withdrew after the trial but before sentencing. Defendant claimed he was unaware of and did not understand the nature of the State's Attorney's office and that he did not realize that Evers had accepted a position with the office that was responsible for his prosecution. Further, defendant alleged that his waiver of the conflict was not made knowingly and intelligently. Defendant claimed Evers' representation of him at trial was ineffective because of his conflicting loyalties.

On appeal, defendant contends that he alleged sufficient information to establish that he was denied effective assistance of counsel because of the *per se* conflict of interest of Evers and, therefore, the

court erred in denying him an evidentiary hearing on his post-conviction petition. We disagree.

Under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1989, ch. 38, par. 122—1 *et seq.*), "a defendant is not entitled to an evidentiary hearing unless he has made a substantial showing of a violation of a constitutional right and the allegations are supported by the record or by affidavits." (*People v. Downey* (1990), 198 Ill. App. 3d 704, 712, 556 N.E.2d 300, 304.) In determining whether an evidentiary hearing is warranted, all well-pleaded facts are taken as true. (*People v. Downey* (1990), 198 Ill. App. 3d 704, 556 N.E.2d 300.) A trial court's dismissal of a post-conviction petition without an evidentiary hearing will not be overturned on review unless the court's determination was clearly erroneous. *People v. Downey* (1990), 198 Ill. App. 3d 704, 556 N.E.2d 300.

Here, defendant contends he made a substantial showing of a constitutional violation when he alleged he received ineffective assistance of counsel because of the *per se* conflict of interest of his trial counsel. Further, his appellate counsel was ineffective for failing to raise the conflict of interest issue on direct appeal. Because of these contentions, we must consider whether the record revealed if Evers had a *per se* conflict of interest that would have warranted reversal if it had been raised on direct appeal.

■ The trial court dismissed defendant's post-conviction petition after finding that Evers had arranged to go to work for the Madison County State's Attorney while he was representing defendant but that defendant had signed a waiver of the conflict of interest regarding Evers' *future employment* after the trial was over. The court concluded that there was no *per se* conflict of interest, stating: "[Defense counsel was] serving only one client, the defendant, and had only a commitment to begin employment with the State's Attorney's Office *after* the conclusion of the trial. Thus, defense counsel was serving only one master at one time. Defense counsel's future association with the State's Attorney's Office could not be considered prejudicial to the defendant."

Initially, we find that the court was correct when it determined that the alleged conflict of interest was not a *per se* conflict. The supreme court in *People v. Spreitzer* (1988), 123 Ill. 2d 1, 525 N.E.2d 30, provides an extensive discussion regarding *"per se* conflict," "potential conflict," "possible conflict," and "actual conflict." The supreme court explained that a *per se* conflict of interest arises in those cases where there was a prior or contemporaneous association with either the prosecution or the victim. In *per se* conflict cases, no show-

ing of prejudice is necessary and the conflict constitutes reversible error. In the case *sub judice* there was no prior or contemporaneous association as defense counsel's employment was a future association with the State's Attorney's office. Thus, any conflict of interest that could arise would be in the future, if Evers continued to represent defendant.

In addition, to hold that Evers' employment with the Madison County State's Attorney's office alone constitutes a *per se* conflict of interest would produce ludicrous results as the supreme court cogently noted in *Spreitzer*, when it stated:

> "Such a rule would have the undesirable effect of discouraging public defender's offices from hiring competent prosecutors. Particularly in small counties where the entire criminal bar is itself not very large, a *per se* rule against assignment of an entire cohort of cases to a public defender who happens to employ a former prosecutor would be an administrative and financial nightmare." (*Spreitzer*, 123 Ill. 2d at 19-20, 525 N.E.2d at 37.)

The same reasoning applies to this case.

Here, we find that Evers' future employment with the Madison County State's Attorney's office presented a "potential or possible" conflict of interest. When the conflict of interest is so categorized, the supreme court has stated that the conflict of interest should be brought to the attention of the trial court at an early stage, or as soon as it is reasonable to do so, in order for the trial court to take adequate steps to ascertain the risk of the conflict and to determine if new counsel is required. (*People v. Spreitzer* (1988), 123 Ill. 2d 1, 525 N.E.2d 30.) If the potential or possible conflict is not brought to the trial court's attention or the trial court refuses to alleviate the potential or possible conflict, then reversal is required without a showing of specific prejudice to a defendant. *People v. Spreitzer* (1988), 123 Ill. 2d 1, 525 N.E.2d 30.

In the instant case, we find that the court was made aware of the potential and possible conflict of interest at the earliest possible stage of the proceedings, and, by the withdrawal of Evers from the case and the representation of defendant by new counsel, the conflict of interest was removed and no reversal was required. Therefore, the court's determination that there was no *per se* conflict of interest was correct.

■ Furthermore, although defendant argues that he was denied effective assistance of counsel due to Evers' conflict of interest and because his appellate counsel was ineffective for not raising the conflict of interest in his direct appeal, we find that there is no showing

that this issue was "patently meritorious," and defendant's conviction and sentence would not have been reversed even if appellate counsel had raised the issue. (*People v. Downey* (1990), 198 Ill. App. 3d 704, 556 N.E.2d 300.) Thus, neither trial counsel nor appellate counsel was ineffective. Defendant failed to make a substantial showing of constitutional error in his post-conviction petition; therefore, the court's dismissal of his post-conviction hearing without an evidentiary hearing was not clearly erroneous.

The second issue raised by defendant is that he is entitled to file a new post-conviction petition, that new counsel should be appointed, and that a new hearing should be held on the petition because there is no showing that his counsel complied with Supreme Court Rule 651(c) (134 Ill. 2d R. 651(c)). Rule 651(c) requires that the record show or that counsel file a certificate alleging that he has consulted with defendant, has examined the record, and has made any amendments to the petitions filed *pro se* so that the defendant's contentions are adequately presented. We find defendant's contention to be without merit, and that the defendant's claim presents a question not addressed by either defendant or the State.

■ The initial problem with defendant's argument is that a reading of Rule 651(c) and of the case law associated with this rule prompts the conclusion that Rule 651(c) applies only to indigent defendants who have *appointed* counsel. Here, defendant's post-conviction petition was not *pro se* and was prepared by private counsel. Additionally, there is no order in the record showing that counsel who prepared defendant's post-conviction petition was appointed by the court. Thus, the inference arises that defendant was not indigent, in that he paid for an attorney's representation for his post-conviction petition. Under these conditions, it is questionable that Rule 651(c) applies.

Furthermore, it has been held that the purpose of Rule 651(c) is to "assure that the indigent petitioner has had an adequate opportunity to present his claims fairly in the context of the appellate process." (*People v. Mason* (1986), 145 Ill. App. 3d 218, 221, 494 N.E.2d 1176, 1178, *rev'd on other grounds sub nom. People v. Porter* (1988), 122 Ill. 2d 64, 521 N.E.2d 1158.) The purpose of Rule 651(c) has been fulfilled in this case since private counsel drafted defendant's post-conviction petition, and it has not been alleged that defendant's post-conviction petition counsel was ineffective for not raising a meritorious issue in the petition. Thus, defendant was afforded his opportunity to adequately present his claims before the trial court.

In addition, if Rule 651(c) should be found to apply to private counsel as well as appointed counsel, it should be noted that our review of the record reveals that defendant's post-conviction petition counsel substantially complied with the rule. Defendant's argument in his brief regarding counsel's failure to meet the requirements of Rule 651(c) stated as follows:

"In the post-conviction petition, defense counsel alleged that trial counsel was ineffective for failing to excuse a juror known by counsel to be a police officer and for failing to question the impartiality of a juror who indicated he knew defendant's family. Post-conviction counsel could not have investigated this claim because there was no copy of the jury *voir dire* included with the record of trial proceedings. The jury *voir dire* transcript was not transcribed and filed in the circuit court until August 15, 1991."

From this argument, defendant concludes noncompliance with Rule 651(c). We find this argument to be a double-edged sword, for the argument raises the inference that counsel had to have discussed this issue with the defendant in order to be aware of the issue. Consulting with the defendant was sufficient to constitute substantial compliance with Rule 651(c).

Given the foregoing conclusions, we find that defendant is not entitled to a remand of this cause for the purpose of filing a new petition, for the appointment of new counsel, or for a new hearing.

For the foregoing reasons, the judgment of the circuit court of Madison County dismissing defendant's post-conviction petition is affirmed.

Affirmed.

MAAG and GOLDENHERSH, JJ., concur.