THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. AUGUS-TINE ZAMBRANO, Defendant-Appellant.

First District (2nd Division)    No. 1—92—1149

Opinion filed September 30, 1994.

McCORMICK, J., specially concurring.

Michael J. Pelletier and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Janet C. Mahoney, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE DiVITO delivered the opinion of the court:
This is an appeal from an order of the circuit court dismissing without an evidentiary hearing defendant Augustine Zambrano's post-conviction petition challenging his convictions for attempted murder, armed violence, aggravated battery, and unlawful use of a weapon by a felon. For reasons that follow, we affirm.

Defendant was represented by attorney William Swano at a

bench trial in October 1987. The evidence adduced was as follows. John Scott, the victim, testified that on December 21, 1986, he was "working the front door" at the Fire Alarm Lounge in Cicero, Illinois. He worked in a well-lit vestibule with two sets of doors. Patrons entered the vestibule through the outer doors approximately 15 feet from where Scott sat and checked patrons for valid identification. There was a large, well-lit canopy outside the vestibule.

At approximately 5:30 a.m. on that date, defendant and three other men, all of Latino or Hispanic origin, entered the vestibule. Defendant was the first man who came in, and he was wearing gold chains and a long gray coat. The second man who came in was wearing a long black coat, but Scott could not remember what the other two men were wearing. The first man who came in was approximately 5 feet 9 inches tall, had medium length hair, a mustache, and "a little hair down his chin."

Defendant approached Scott and produced a valid Illinois driver's license with a photograph. One of the other three men produced an invalid identification and the other two did not have any identification. Scott spoke to defendant from a distance of about two feet, telling him that his friends could not come in because they did not have proper identification. All four men then sat off to the side in a waiting area. Approximately five to eight minutes later, defendant walked up to Scott and asked whether he could let his friends in. Scott told defendant that he could come in, but his friends could not. During this conversation, Scott stood approximately two to three feet from defendant and could see his face and features clearly.

At that point, "comments were being said," and Scott approached the men and told them they would have to leave. All four men then left the vestibule and stood outside under the canopy. The two men without identification were the first to leave the vestibule, and defendant was the last to leave. All four men stood outside under the canopy at a distance of four feet, while Scott stood in the doorway looking directly at them. Defendant was the third man from his right. Scott told the men to go home, turned to go inside, and then, "out of the corner of [his] eye," saw the third man from his right run towards him holding a gun in his hand. That man shot Scott in the stomach, and all four men then fled.

Five days after the shooting, while in the hospital receiving medical treatment for his gunshot wound, Scott identified defendant from a photographic array as the man who shot him. Scott testified that there was "no doubt in [his] mind" that defendant shot him.

Walter Dzendzeluk testified that at approximately 5:30 a.m. on December 21, 1986, he was in the vestibule at the Fire Alarm Lounge.

He had been to two other taverns that night and between 10 p.m. and 5:30 a.m. had consumed approximately 12 beers. Dzendzeluk saw Scott standing in the doorway speaking to defendant. Defendant was standing just outside the doorway at that time and was wearing a long gray coat. Dzendzeluk, who is 6 feet tall, walked up behind Scott, who is 6 feet 5 inches tall, looked over his shoulder, and saw defendant's face clearly from a distance of approximately four feet. Dzendzeluk stood directly behind Scott one foot from the door for at most 60 seconds. He "heard a shot" that came "[f]rom the gentleman standing, facing the doorway." The man who shot Scott fled after the shooting.

Dzendzeluk identified defendant as the shooter at a police lineup that morning. He also identified defendant in court as the man who was standing outside the doorway facing him and also as the man who shot Scott.

Alex Torrez, a friend of defendant, testified on defendant's behalf. He went to the Fire Alarm Lounge at approximately 5:30 a.m. on December 21, 1986, carrying a .22-caliber handgun. He showed his identification card to Scott, but Scott told him he could not enter and called him a "spick." Scott then pushed him down onto the sidewalk, reached for something that Torrez thought was a gun or a knife, and then came at him. He got scared, pulled out his gun, shot Scott from a distance of about eight feet, and then ran away. At the time of the shooting, defendant was talking to someone off to the side to the left of the doors.

At the time of the trial, Torrez was 20 years old and had two criminal charges pending against him. He admitted he had never spoken with police about the incident at the Fire Alarm Lounge, but that he had discussed his testimony with defendant's lawyer and with another defense witness. On December 26, 1986, five days after the shooting, he had had defendant's lawyer transcribe a statement in which he admitted shooting Scott.

Erin Johnson testified that, on December 21, 1986, after she finished her 8½-hour shift as a waitress in a restaurant, she drove to the Fire Alarm Lounge with two men. One of those men was Brian Freeze, whose testimony was the subject of defendant's motion to re-open his case in chief, discussed below.

She arrived at the Fire Alarm Lounge between 4:30 and 5 a.m., and from a point about eight feet from the door and off to the side she saw an argument between three men, including defendant and Scott. She saw Torrez lift up his coat and then heard a "pop." At the time she heard the "pop," Torrez had one hand in his pocket. Defendant was wearing a long black coat at that time and did not have a

gun in his hand. After hearing the "pop," she saw Torrez turn and run away, and then she saw a "glare" that "appeared to be" a gun. On cross-examination, she admitted that she was not "exactly" sure that she saw a gun.

Johnson further testified that she spoke with defendant's investigator 10 days after the shooting. The investigator showed her several photographs of the Fire Alarm Lounge and one photograph of Alex Torrez. She admitted that she was never shown a photograph of defendant and that she never viewed a lineup.

David Morrison also testified for the defense. He arrived at the Fire Alarm Lounge between 4 and 4:30 a.m. on December 21, 1986, after working as a bouncer at another tavern from 9 p.m. until 4 a.m. He drank three or four beers and then entered the vestibule to buy cigarettes. There was a commotion at the door, approximately 10 to 15 feet from where he was standing. Morrison claimed he could see out the front door, even though Scott was standing in the doorway.

He heard a shot and saw defendant outside the doorway with his hands down by his side and wearing a black coat. He did not see a gun in defendant's hand. Although he claimed that defendant did not shoot Scott, he admitted on cross-examination that he did not see the shooting and did not know who shot Scott.

Finally, Gregory Gunter testified that on December 21, 1986, he was at the Fire Alarm Lounge and drank about six beers between midnight and 5:30 a.m. He spoke with defendant that night outside the Fire Alarm Lounge, while defendant's friends, including Torrez, were arguing with Scott. While he was talking to defendant, he heard a shot and then saw people running away. Defendant was wearing a long black coat at the time of the shooting and did not have a gun. Gunter was a friend of defendant and had been convicted of auto theft and robbery.

Following closing arguments, defendant was found guilty by the circuit court of attempted murder, armed violence, aggravated battery, and unlawful use of a firearm by a felon. Subsequently, William Swano, defendant's trial counsel, filed a motion to reopen defendant's case in chief because he had located a witness, Brian Freeze, who had gone to the Fire Alarm Lounge with Erin Johnson at the time of the shooting. The court denied the motion because Swano had Freeze's name on the day the trial began, and Swano did not exercise due diligence in locating Freeze before the trial ended. The court also refused to allow Swano to call Freeze to present his testimony for the record, citing the lack of due diligence.

On December 4, 1987, Swano took Freeze's deposition. At that deposition, Freeze stated that he was "absolutely" sure defendant was

not the shooter. Swano then filed a supplemental motion for a new trial, which included as grounds for error the circuit court's refusal to allow Freeze to testify on defendant's behalf. At the hearing on the motion on January 19, 1988, Swano read the deposition into the record. The motion was denied. The court noted that the deposition testimony was "cumulative, almost verbatim with Mr. Torrez' alleged confession." The judge also noted that he had looked in the telephone book and found the telephone number of Freeze's father.

The court heard arguments in aggravation and mitigation, and sentenced defendant to 20 years for attempted murder, 20 years for armed violence, 5 years for each count of aggravated battery, and 5 years for unlawful use of a firearm by a felon, the sentences to run concurrently.

Defendant appealed, again represented by Swano. He claimed that the circuit court's finding was erroneously based on unreliable identification testimony; that the circuit court erred when it denied defendant's motion to reopen his case to allow Freeze to testify; and that the circuit court improperly shifted the burden of proof to defendant. This court affirmed the conviction. (*People v. Zambrano* (1989), 188 Ill. App. 3d 432, 544 N.E.2d 964, *appeal denied* (1989), 129 Ill. 2d 571, 550 N.E.2d 565.) Among other things, we held that the circuit court properly denied defendant's motion to reopen his case where Swano did not exercise due diligence in contacting Freeze and where Freeze's testimony was not credible and would not have changed the outcome of the trial.

After we affirmed his conviction, defendant, through new attorneys, filed a petition and an amended petition for post-conviction relief. In his petitions, defendant claimed that he was denied the effective assistance of counsel where Swano failed to list Freeze in his answer to discovery; that he was denied the effective assistance of counsel where Swano failed to inform him of a potential conflict of interest arising from Swano being under Federal investigation during the course of the trial; and that he was denied the effective assistance of counsel where Swano was addicted to cocaine at the time of his trial and his appeal.

The State filed a motion to dismiss the petition without a hearing. Following discussions about the petitions and the motion to dismiss, the court stated that an attorney is not ineffective merely because he knows of a witness yet does not call that witness to testify. The court noted that several witnesses testified at trial and that Freeze's testimony would not have reinforced the defense since the court did not find any of the defense testimony to be credible. The court reiterated that when the witness who confessed to the crime stepped down

from the stand, he made gang signs. The court also stated that the outcome of the trial would not have been any different even if Freeze had testified. Finally, the court stated that Swano could not be considered ineffective merely because he was under investigation at the time he represented defendant. The court concluded that defendant's petition was not sufficient and, thus, denied it. From this order, defendant appeals.

A post-conviction petitioner is not entitled to an evidentiary hearing as a matter of right. (*People v. Owens* (1989), 129 Ill. 2d 303, 308, 544 N.E.2d 276, *cert. denied* (1990), 497 U.S. 1032, 111 L. Ed. 2d 802, 110 S. Ct. 3294.) A hearing is required only when the petitioner makes a substantial showing of a violation of constitutional rights, and in order to accomplish this, the allegation in the petition must be supported by the record in the case or by accompanying affidavits. (*Owens*, 129 Ill. 2d at 308; *People v. Silagy* (1987), 116 Ill. 2d 357, 365, 507 N.E.2d 830, *cert. denied* (1987), 484 U.S. 873, 98 L. Ed. 2d 163, 108 S. Ct. 212.) The petitioner bears the burden of proving that a substantial constitutional violation occurred at trial. (*People v. Eddmonds* (1991), 143 Ill. 2d 501, 510, 578 N.E.2d 952, *cert. denied* (1992), 503 U.S. 942, 117 L. Ed. 2d 630, 112 S. Ct. 1489.) If the record and affidavits are inadequate to support the allegation, the circuit court does not have to hold an evidentiary hearing. (*People v. Gaines* (1984), 105 Ill. 2d 79, 92, 473 N.E.2d 868, *cert. denied* (1985), 471 U.S. 1131, 86 L. Ed. 2d 282, 105 S. Ct. 2666.) The denial of an evidentiary hearing on a post-conviction petition will not be reversed unless the determination of the circuit court was manifestly erroneous. *People v. Titone* (1992), 151 Ill. 2d 19, 24, 600 N.E.2d 1160; *Silagy*, 116 Ill. 2d at 365.

## I

Defendant first argues that he was denied the effective assistance of counsel where his trial and appellate attorney, William Swano, was under a conflict of interest since he was the subject of a Federal investigation concerning corruption in the courts, was addicted to cocaine, failed to present the testimony of Brian Freeze which defendant claims would have helped his defense, and continued to represent defendant on appeal even though he could not and did not raise the issue of his ineffectiveness at trial for failing to present Freeze's testimony. The State responds that there is no evidence in the record or in accompanying affidavits that Swano was under investigation or addicted to cocaine, and that the circuit court's dismissal of the petition with regard to these issues was therefore not manifestly erroneous. Further, the State contends that since the court before which defendant's case was tried in a bench trial specifically stated

that Freeze's testimony would not have helped defendant's defense, his allegation of ineffective assistance of counsel fails the second prong of the *Strickland v. Washington* test, that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the trial would have been different. By the same token, the State contends, defendant's allegation of ineffective assistance of appellate counsel because of the failure to raise this issue on direct appeal must also fail, because appellate counsel could never have established that defendant was prejudiced.

## A

The sixth amendment right to effective legal representation includes the right to be represented by an attorney who is not suffering from a conflict of interest. (*Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173.) When the record establishes a *per se* conflict, no showing of prejudice is required in order to obtain relief. (*Cuyler v. Sullivan* (1980), 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708; *People v. Holmes* (1990), 141 Ill. 2d 204, 565 N.E.2d 950.) However, a claim of ineffective assistance of counsel which does not involve a *per se* conflict of interest must be analyzed under the standards of *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, adopted in Illinois in *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061. (*People v. Titone* (1992), 151 Ill. 2d 19, 32, 600 N.E.2d 1160.) Thus, unless there is a *per se* conflict of interest, the defendant must show that his counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by the deficient performance. *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.

■ A *per se* conflict applies only to the class of cases where defense counsel had a tie to a person or entity which would benefit from an unfavorable verdict for the defendant. (*People v. Spreitzer* (1988), 123 Ill. 2d 1, 16, 525 N.E.2d 30, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.) In this case, defendant does not claim, and the record does not establish, that defense counsel Swano had a tie to a person or entity which would benefit from an unfavorable verdict for defendant. Defendant alleged merely that Swano was under Federal investigation for corruption in the courts at the time of defendant's trial. Thus, defendant's claim of ineffective assistance of counsel did not involve a *per se* conflict of interest, and defendant was required to show that he was prejudiced by his attorney's performance.

Defendant was not prejudiced by the pending investigation. Counsel appeared at every court proceeding and argued vigorously on defendant's behalf. There is nothing in the record which suggests that the investigation or counsel's attention to it interfered with counsel's representation of defendant. Further, there is no direct evidence which suggests that the investigation influenced Swano's actions on defendant's case. The mere fact that Swano was being investigated for improprieties with regard to other nonrelated cases is not enough to taint other cases with which he was involved. (See, e.g., *People v. Titone* (1992), 151 Ill. 2d 19, 27-34, 600 N.E.2d 1160.) Finally, despite defendant's assertions to the contrary, there was clear, credible, and convincing evidence of defendant's guilt. Thus, the record does not disclose how the result of the proceedings could have been any different had counsel not been under Federal investigation at the time of defendant's trial.

In addition to the lack of prejudice, counsel's representation did not fall below an objective standard of competence. Counsel's performance is evaluated based on the entire record. (*People v. Dobrino* (1992), 227 Ill. App. 3d 920, 934, 592 N.E.2d 391.) Careful review of the record reveals that counsel provided a strong, vigorous defense during trial, post-trial motions, and on appeal. This was a difficult case to defend, given the nature and strength of the identification evidence, but counsel presented the best case he could. He gave an opening statement, made timely objections, and argued his client's innocence at closing, at a post-trial hearing, and at sentencing. This is zealous and competent representation that does not fall below an objective standard of competence. The first prong of the *Strickland* test was also not satisfied.

## B

■ Defendant's argument that he was somehow prejudiced by trial counsel's alleged addiction to cocaine is also unavailing. Although it is true, as defendant asserts, that the circuit court made no comment about the drug addiction allegation which was based upon information and belief, the allegation is not supported in the record and no affidavits or other evidence was submitted to support it. Therefore, the circuit court's decision to dismiss the amended petition without an evidentiary hearing was not manifestly erroneous because there was no evidence to support the claim that counsel was addicted to cocaine at the time of trial. (See *People v. Mendez* (1991), 221 Ill. App. 3d 868, 872-73, 582 N.E.2d 1265, *appeal denied* (1992), 143 Ill. 2d 644, 587 N.E.2d 1021; *People v. Jackson* (1991), 213 Ill. App. 3d 806, 812, 572 N.E.2d 475, *appeal denied* (1991), 141 Ill. 2d

551, 580 N.E.2d 125; *People v. Pittman* (1989), 192 Ill. App. 3d 943, 950, 549 N.E.2d 742, *appeal denied* (1990), 131 Ill. 2d 564, 553 N.E.2d 400.) Even if there were evidence supporting the allegation, however, the allegation would fail both prongs of the *Strickland* test, because counsel's representation did not fall below an objective standard of reasonableness, and defendant was not prejudiced even if it did.

## C

■ The record does contain evidence of the purportedly useful testimony of Brian Freeze. However, this evidence does not support defendant's allegation that it would have helped his defense. After reviewing the deposition introduced at defendant's hearing on the motion for a new trial, the court specifically stated that Freeze's testimony would not have helped defendant's defense. The court concluded that the deposition was suspiciously "cumulative, almost verbatim" with Torrez's confession on the witness stand, the contents of which were available to Freeze to review before his deposition. The court had determined that this confession was so lacking in credibility that Torrez should be investigated for possible perjury charges. Consequently, defendant's claim that his trial counsel was ineffective for failing to present Freeze's testimony because it would have helped his defense was merely an unsupported conclusional allegation that did not require the court to hold an evidentiary hearing. *People v. Jackson* (1991), 213 Ill. App. 3d 806, 810-11, 572 N.E.2d 475, *appeal denied* (1991), 141 Ill. 2d 551, 580 N.E.2d 125.

Similarly, defendant's claim of ineffective assistance of appellate counsel was also an unsupported conclusional allegation. In essence, defendant asserts that appellate counsel was ineffective for failing to raise his own ineffectiveness as trial counsel because he failed to introduce Freeze's testimony, which would have helped his defense. As just discussed, there is nothing in the record to suggest that Freeze's testimony would have helped the defense. Because the underlying claim of ineffective assistance lacked support, defendant's claim of ineffective assistance of appellate counsel also lacks support.

Consequently, the circuit court's decision to dismiss the amended petition for post-conviction relief without an evidentiary hearing into the allegations based on Brian Freeze's testimony was not manifestly erroneous.

## D

Defendant finally argues in his ineffective assistance of counsel claim for the first time on appeal that appellate counsel was ineffective because he failed to raise the Illinois one-act-one-crime

doctrine on direct appeal. This issue was not raised in defendant's post-conviction petition.

Defendant has the right to effective assistance of counsel on direct appeal. (*Evitts v. Lucey* (1985), 469 U.S. 387, 83 L. Ed. 2d 821, 105 S. Ct. 830.) The United States Supreme Court did not, however, address the issue of what standards are to be used in assessing the competence of counsel on direct appeal. The Illinois Supreme Court has held that the first prong of the *Strickland* test is an appropriate measure, but it has replaced the second prong of *Strickland* with a new test: that there is a reasonable probability that, but for appellate counsel's error, defendant's sentence or conviction would have been reversed. *People v. Caballero* (1989), 126 Ill. 2d 248, 270, 533 N.E.2d 1089.

■ The issue of the one-act-one-crime doctrine is meritorious, and had it been raised on direct appeal, defendant would certainly have won vacation of his convictions and sentences for armed violence and aggravated battery. Further, if defendant had raised the issue in his post-conviction petition, the circuit court would certainly have held an evidentiary hearing on the petition and would just as certainly have vacated defendant's convictions and sentences for armed violence and aggravated battery.

Defendant did not, however, raise the issue in his post-conviction petition; ineffective assistance of appellate counsel was first raised in this appeal from the dismissal of his post-conviction petition without an evidentiary hearing.

Even errors of constitutional dimension are considered waived on review if not raised. (725 ILCS 5/122—3 (West 1992); see also *People v. Flores* (1992), 153 Ill. 2d 264, 274, 606 N.E.2d 1078, 1083; *People v. Davis* (1993), 156 Ill. 2d 149, 158, 619 N.E.2d 750, 755.) Further, our supreme court has held repeatedly that in post-conviction proceedings the plain error rule may not be invoked to save procedurally defaulted claims such as this one. (*Davis*, 156 Ill. 2d at 159; *People v. Owens* (1989), 129 Ill. 2d 303, 316-17, 544 N.E.2d 276, 281, *cert. denied* (1989), 497 U.S. 1032, 111 L. Ed. 2d 802, 110 S. Ct. 3294; *People v. Free* (1988), 122 Ill. 2d 367, 377-78, 522 N.E.2d 1184, 1188-89, *cert. denied* (1988), 488 U.S. 872, 102 L. Ed. 2d 159, 109 S. Ct. 190.) We therefore cannot accept defendant's suggestion that we vacate his convictions and sentences for armed violence and aggravated battery because his appellate counsel failed to raise the one-act-one-crime doctrine on direct appeal. This issue is waived.

## II

Defendant also contends that the failure of the record to show

compliance with Supreme Court Rule 651(c) (134 Ill. 2d R. 651(c)) requires that the dismissal of his petition be reversed and remanded to provide him with counsel who will comply with the rule. Defendant asserts that Rule 651(c) requires counsel representing him on his post-conviction petition to have consulted with him concerning the alleged deprivation of his constitutional rights; to have examined the record of proceedings at trial; and to have made amendments to his *pro se* petition. The State responds, first, that Rule 651(c) did not apply to defendant's post-conviction counsel because they were retained by defendant and not appointed by the court; and, second, that even if Rule 651(c) applies to defendant's post-conviction counsel, his failure to file a certificate is harmless where the record demonstrates that counsel complied with the rule's substantive requirements.

Supreme Court Rule 651(c) reads as follows:

"(c) Record for Indigents; Appointment of Counsel. Upon the timely filing of a notice of appeal in a post-conviction proceeding, if the trial court determines that the petitioner is indigent, it shall order that a transcript of the record of the post-conviction proceedings, including a transcript of the evidence, if any, be prepared and filed with the clerk of the court to which the appeal is taken and shall appoint counsel on appeal, both without cost to the petitioner. The record filed in that court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner either by mail or in person to ascertain his contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." 134 Ill. 2d R. 651(c).

First, the heading of the rule and its language make it clear that Supreme Court Rule 651(c) applies only to a petitioner who filed a *pro se* post-conviction petition, was determined to be indigent by the court, and for whom counsel is appointed at no cost to petitioner. In this case, defendant's post-conviction counsel were retained by defendant, not appointed by the court, and defendant's petition was not filed *pro se*. Supreme Court Rule 651(c) does not apply.

Second, even if Supreme Court Rule 651(c) did apply, the language of the rule states that the filing of a certificate *may* be used to make the required showing; it does not require a certificate. Further, the Illinois Supreme Court has held that substantial compliance is all that is required. (*People v. Szabo* (1991), 144 Ill. 2d 525, 532, 582 N.E.2d 173, *cert. denied* (1992), 506 U.S. 832, 121 L. Ed. 2d 59, 113 S. Ct. 99.) Post-conviction counsel complies with the requirements of

Supreme Court Rule 651(c) where the record demonstrates that counsel consulted with the defendant to ascertain his or her contentions of deprivation of constitutional rights; that counsel read as much of the trial transcript as necessary to present and support those constitutional claims adequately; and that counsel made any necessary amendments to the *pro se* petition which had been filed. (*People v. Johnson* (1993), 154 Ill. 2d 227, 237, 609 N.E.2d 304; *People v. Davis* (1993), 156 Ill. 2d 149, 164, 619 N.E.2d 750; *Szabo*, 144 Ill. 2d at 532.) Where the supreme court wished to *require* the filing of a certificate, as in Supreme Court Rule 604(d) (134 Ill. 2d R. 604(d)), it was careful to use the word "shall" in place of the word "may":

> "The defendant's attorney *shall* file with the trial court a certificate stating that the attorney has consulted with the defendant either by mail or in person to ascertain his contentions of error in the entry of the plea of guilty, has examined the trial court file and report of proceedings of the plea of guilty, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." (Emphasis added.) 134 Ill. 2d R. 604(d).

The fact that the supreme court has held that Rule 604(d) must be strictly complied with (see *People v. Wilk* (1988), 124 Ill. 2d 93, 529 N.E.2d 218; *People v. Janes* (1994), 158 Ill. 2d 27, 630 N.E.2d 790) does not mean that Rule 651(c) must be strictly complied with, however similar the two might be. Defendant's argument to that effect is unavailing.

In this case, the record indicates that post-conviction counsel consulted with defendant, read the report of proceedings at trial, and prepared and amended defendant's post-conviction petition. Defendant's claim that post-conviction counsel failed to amend the petition to include a meritorious claim under the Illinois one-act-one-crime doctrine is not persuasive. Supreme Court Rule 651(c) requires post-conviction counsel to amend the petition so that it is adequate for the presentation of petitioner's contentions, not to include every claim petitioner thinks amounts to a deprivation of constitutional rights. Further, because post-conviction assistance of counsel is a creation of statute, such assistance is not the assistance of counsel contemplated by the sixth amendment, and defendant may not properly assert a claim of ineffective assistance of post-conviction counsel. *Davis*, 156 Ill. 2d at 159; *Flores*, 153 Ill. 2d at 276.

In short, defendant's post-conviction counsel were not required to comply with Supreme Court Rule 651(c), and even if they were, they substantially complied with it. In a similar case, the fifth district of this court recently ruled the same way. (See *People v. Doggett* (1993),

255 Ill. App. 3d 180, 625 N.E.2d 923.) This court will not disturb the ruling of the circuit court dismissing defendant's post-conviction petition without an evidentiary hearing on the basis of the alleged violation of Supreme Court Rule 651(c).

For the above-stated reasons, we affirm the circuit court's denial of defendant's post-conviction petition without an evidentiary hearing.

Affirmed.

SCARIANO, J., concurs.

JUSTICE McCORMICK, specially concurring:

In *Davis*, as in this case, the trial court entered two separate convictions for a single act. (*Davis*, 156 Ill. 2d at 153.) The defendant in *Davis*, like defendant here, failed to raise the one-act-one-crime issue either on direct appeal or in his post-conviction petition. (*Davis*, 156 Ill. 2d at 152.) The two defendants raised the issue only on appeal from denial of petitions for post-conviction relief. (*Davis*, 156 Ill. 2d at 158-59.) Our supreme court in *Davis* held that the defendant there waived the argument, and the courts could not invoke the plain error doctrine to review a claim waived in this manner. *Davis*, 156 Ill. 2d at 159.

Despite this holding the court in *Davis*, in the exercise of its supervisory authority, vacated the improper conviction for the lesser offense. (*Davis*, 156 Ill. 2d at 160.) Here, defendant's improper convictions for aggravated battery and armed violence subject him to much the same prejudice that the supreme court found the defendant faced in *Davis* (156 Ill. 2d at 160). Although this case presents virtually the same grounds which led our supreme court to vacate the improper convictions and remand for resentencing, this court is without the supervisory authority the supreme court invoked in that case. Supervisory authority vests solely in the supreme court. (Ill. Const. 1970, art. VI, § 16; see *Jam Productions, Ltd. v. Dominick's Finer Foods, Inc.* (1983), 120 Ill. App. 3d 8, 13-14, 458 N.E.2d 100.) We have the general power vested in courts to correct the record, remedy errors of mistake and to supply omissions. However, this power does not extend to correcting the actual declared judgment of the trial court where the purported error in the underlying post-conviction proceeding is waived. Only the supreme court can vacate an improper conviction under these circumstances.